SAMUEL A. BROWN ET ALS. *vs.* WINTER MEAD, GUARDIAN, ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

(1)

Argued November 7th, 1935—decided January 8th, 1936.

*Lucius F. Robinson, Jr.,* for the defendants Francis H. Geer *et al.*

*Howard E. Hausman,* with whom was *William H. Blodgett,* for the defendants Winter Mead *et al.*

*H. Roger Jones,* for the plaintiff trustees.

MALTBIE, C. J. On February 24th, 1920, Helen Hartley Jenkins entered into a trust agreement whereby she transferred a large amount of property to be held in trust. The agreement, to which we shall refer as the first agreement, stated the purpose to be to create a trust for the benefit of her daughter, Grace Hartley Jenkins, who was to receive the net income of the property, and should she be alive at the termination of the trust, which was to be at the end of

fifteen years, the principal. The donor reserved the right at any time to modify or supplement the agreement in any way she saw fit, provided it was not for her own benefit. On January 13th, 1921, exercising the reserved power to modify the trust, she executed another agreement, which we shall refer to as the second agreement, in terms supplementing and becoming a part of the original agreement, but in effect constituting an almost complete substitute for it. Under this agreement Grace Hartley Jenkins was to receive the income of the property until the donor's death, and thereafter certain amounts were to be expended for the benefit of two grandchildren of the donor, Francis Geer, Jr. and Helen Hartley Geer, until the youngest reached the age of twenty-one, and they or their children were ultimately to receive the principal. The donor again reserved the right to modify or supplement the instrument, provided it was not for her own benefit.

While it is not stated in the stipulation of facts, it is apparent from the record that previous to the execution of the second agreement the donor's daughter, Grace Hartley Jenkins, had been married, and it is stipulated that, subsequent to the execution of the agreement, two children were born to her, Helen Hartley Mead on November 24th, 1922, and Edwin Winter Mead on December 23d, 1923. On March 25th, 1925, the donor, again exercising her power to modify or supplement the previous agreement, executed a further agreement, to which we shall refer as the third agreement, which was stated to be a supplement to and part of the two previous agreements, all to constitute one complete document and to be administered to make one consistent whole. The relevant portions of the three agreements to which we have referred are given

in the footnote. On the same day she made the third agreement she also executed a further modification of

### First Agreement

#### "SECOND

"The said Trustee hereby acknowledges the delivery to him of the said property, accepts and agrees to hold the same *in trust* for the uses and purposes hereinafter specified.

"1:—To accumulate, pay over or apply the net income of said property to or for the use of the said Grace Hartley Jenkins, for and during the specified term of the Trust.

"2:—In event of the death of said Grace Hartley Jenkins, during the term of this Trust, then to accumulate, apply and pay over the net income from the said property to or for the use of *Marcellus Hartley Dodge,* of Madison, New Jersey, for and during the term of the Trust.

"3:—In event of the death of said Grace Hartley Jenkins, as aforesaid, during the term of this Trust, and in event of the death of said Marcellus Hartley Dodge, during the term of this Trust, then to close the Trust forthwith and to pay over the principal thereof to the estate of said Grace Hartley Jenkins, to be distributed in accordance with the terms of her last will and testament, or if she shall die Intestate to be distributed under the Inheritance Laws of the State of Connecticut."

#### "SEVENTH

"The term of this Trust shall be fifteen years from the date of the execution of that instrument . . . and at the expiration of the term of this Trust, providing the same has not been closed under any of the provisions hereinbefore set forth, then to terminate the same by payment of the said principal sum to the said Grace Hartley Jenkins her heirs and assigns forever."

#### "EIGHTH

"Wherever the word 'principal' is used it shall include accumulations, if any."

### Second Agreement

#### "THIRD

". . . And the said Trustees herein named accept such property *in Trust* and agree to hold the same for the uses and purposes hereinafter specified.

"First:—To accumulate, pay over and apply the said income of said property to and for the use of Grace Hartley Jenkins for and during the terms of the Trust or until the death of the said Donor.

"Second:—In event of the death of the said Grace Hartley Jenkins, during the term of this Trust, then to accumulate, apply and pay over the net income from the said property in accordance with instructions of the said Donor to be made at said time.

the agreements, in which she surrendered her reserved power to make changes in the terms of the trust. She died April 24th, 1934.

"Third:—The eventual purpose and intention of this Trust is to make provisions for the care and maintenance, in such style, as is in accordance with a proper method of life for two grandchildren of the said Donor, to wit:—For Francis Geer, Jr. and Helen Hartley Geer, both at the date of the making of this Trust Agreement infants under the age of six (6) years.

"Said Trustees, herein named, are authorized in the exercise of all of their various powers under this instrument, so far as relates to the management of the Trust for the benefit of said two children, to use their own best discretion and to follow or not to follow the application of moneys paid by them as they may decide is necessary to assure to the said children the eventual object, of this Trust.

"The said objects are hereby stated to be that, under the supervision of said Trustees, said children are to receive proper support and maintenance in accordance with their station in life, and a thorough education for such purposes as they seem to be fitted for, so that they may go forth into life when they become of age thoroughly fitted and equipped to carry out the great responsibilities which may be thrown upon them. For such purposes my said Trustees must evince a thorough and continued interest in the personal well-fare of said children and must see to it that the moneys hereinafter set aside for them are applied in such a manner as to make the broad purposes of this Trust, so far as relates to said children, practical and complete.

"With this general statement of the purposes of the Trust to guide them, I hereby direct, that dating from the date of my death, there may be set aside by the said Trustees for expenditure, for each of children the sum of six thousand (6000) dollars cash which may be paid by them for the support, maintenance and education of each of said children for each year until the said Helen Hartley Geer is ten years old. After she is ten and until she is fifteen, the sum of ten thousand (10,000) dollars a year to each, may be set aside and paid out for said purposes. After she is fifteen and until she shall be twenty-one the sum of fifteen thousand (15,000) dollars a year to each.

"When the said Francis Geer, Jr. shall arrive at the age of twenty-one years my said Trustees are authorized, in addition to all payments of income as hereinbefore specified, to pay to the said Francis Geer, Jr., or for his benefit, in such way as they and he together may decide to be for his best interest, a payment on account of principal, of fifty thousand (50,000) dollars.

"When the said Helen Hartley Geer, shall arrive at the age of

The first question raised by the interrogatories concerns the right of Helen Hartley Mead and Edwin

twenty-one years, my said Trustees are authorized, in addition to all payments of income as hereinbefore specified, to pay to the said Helen Hartley Geer, or for her benefit, in such way as they and she together may decide to be for her best interest, a payment on account of principal of fifty thousand (50,000) dollars.

"When the said Francis Geer, Jr. shall arrive at the age of twenty-five years, then my said Trustees, may, at their discretion, pay over to the said Francis Geer, Jr. all the balance of principal due him under this Trust.

"When the said Helen Hartley Geer, shall arrive at the age of twenty-five years, then my said Trustees, may, at their discretion, pay over to the said Helen Hartley Geer, all the balance of principal due her under this Trust.

"Fourth:—This Trust is intended to provide for each of said children alike and the term of the Trust, if the same shall not be terminated by payment in full in accordance with the authority hereinbefore conferred shall be twenty five years from February 24th, 1920, and, at the termination of said twenty five years if not already terminated under other provisions the said Trustees shall pay over to the persons entitled thereto all the balance of the principal of said Trust fund.

"Fifth:—In event of the death of either of said children before attaining the age of twenty-one, then all the said childs share in the Trust fund, both income and principal shall pass to the surviving child. The provisions relating to income shall remain in amount and in distribution as according to this agreement but the payments in principal may be increased in accordance with the discretion of my said Trustees, to a total sum not exceeding double any payment authorized to the single child. That is to say, in the event of the death of either of such children the surviving child may receive not to exceed one hundred thousand (100,000) dollars principal upon attaining the age of twenty one and the whole corpus of the Trust at twenty four.

"In event of the death of both of said children before attaining the age of twenty one, then in the absence of the application of any provisions herein the said Trust shall forthwith determine and end and the corpus thereof shall be payable into my estate.

"If either of said children should die before attaining the age of twenty one and leave a child or children, then I direct that said child or children shall take the parents place in the distribution of all moneys, income or principal, or both as provided for in this Trust.

"If either of said children should die before attaining the age of twenty five and leave a child or children, then I direct that

Winter Mead, the grandchildren named in the third agreement, to share in the benefits of the trust. That the donor intended that they should share equally with her other grandchildren named in the second agreement, at least in some of the benefits provided, is apparent from even a casual reading of the third agreement. That instrument is far from precise in its terms and evidences a considerable degree of confusion in the mind of the draftsman. For example, it confirms the "administrative clauses" of the trust which relate to the payment of income during the lifetime of the donor's daughter, Grace Hartley Jenkins, and her

said child or children shall take the parents place in the distribution of all moneys, income or principal, or both as provided for in this Trust."

"NINTH

"Wherever the word 'principal' is used it shall include accumulations, if any."

*Third Agreement*

"SECOND

"This agreement ratifies and confirms all of the administrative clauses of said Trust which relate to payment of income during the lifetime of my daughter, Grace Hartley Mead and my nephew, Marcellus Hartley Dodge.

"THIRD

"Upon the termination of said Trust so far as relates to income, and when the principal shall be deliverable under the terms thereof, then I include in the beneficiaries of said Trust my granddaughter, Helen Hartley Mead and my grandson, Edwin Winter Mead, to share equally with my other grandchildren already named as beneficiaries, so that the said Helen Hartley Mead and said Edwin Winter Mead shall receive an equal share under conditions such as are now provided for my said grandchildren, Francis Geer, Jr., and Helen Hartley Geer, and the said shares which are hereby set aside for the said Helen Hartley Mead and the said Edwin Winter Mead shall be taken by them under the same conditions and be administered in the same manner as the said shares set aside for my other two grandchildren.

"The effect of this supplement is intended to be to insert the said grandchildren, Helen Hartley Mead and Edwin Winter Mead as equal beneficiaries under said trust, under all of the conditions, limitations and provisions for administration as the same are therein set forth."

nephew Marcellus Hartley Dodge; but as modified by the second agreement the trust provides for the payment of income to the daughter only during the term of the trust or, if the donor died before the end of that term, only until her death, and any provision for payment of income to the nephew is eliminated. The lack of precision in the language used and the apparent confusion in the third agreement suggests two considerations we must have in mind. One is that we cannot expect to effectuate the intent of the donor by applying to the words used a precise or technical meaning, and the other, that the draftsman had in mind the provisions of the original agreement as well as those of the second.

The third section of the third agreement in terms provides that the right of the Mead children to share in the trust is to begin "Upon the termination of said Trust so far as relates to income, and when the principal shall be deliverable under the terms thereof." As a portion of the principal of the fund becomes deliverable when Francis Geer, Jr., reaches the age of twenty-one, and as this would be before the yearly payments to the Geer children, which continue until Helen Hartley Geer reaches that age, about a year and a half later, would cease, it is not possible, if we assume that those yearly payments were intended to be included within the term "income," to construe the two clauses in the quotation we have made as referring to the same time. If, on the other hand, we assume that the donor had in mind a distinction between the provision made for the payment of the income of the fund to her daughter until the donor's death, if that occurred before the termination of the trust, and the provision for yearly payments for the benefit of the grandchildren, then the rights of the Mead children would arise upon the donor's death.

It is further provided in the third agreement that the shares "hereby set aside" for the Mead children are to be taken "under the same conditions and be administered in the same manner as the said shares set aside" for the Geer children, and also that the effect of the provision is to be to insert the Mead children "as equal beneficiaries under said trust, under all the conditions, limitations and provisions for administration as the same are therein set forth." Certainly the Mead children cannot be "equal beneficiaries under said trust" unless they share in income as well as principal, and the references to the administration of the trust would mean little unless they are applied to the distribution of income as well as principal. The phrase at the beginning of the article, "Upon the termination of said Trust so far as relates to income," must be taken in a restrictive sense. This article follows immediately upon the second, which confirms and ratifies the provisions of the trust relating to the payment of income to the donor's daughter and her nephew. Disregarding the latter, as we must, the mind of the draftsman in using the phrase last quoted, "termination of said Trust so far as relates to income," must have centered upon the provision for income payments to the daughter. Only by so construing it can we give a sensible meaning to the third article as a whole. The Mead children are, then, entitled to share in yearly payments to be made beginning with the death of the donor.

That being so, it becomes of importance to determine the nature of the rights of the Geer children under the provision for yearly payments to them. Beyond most trusts, the one before us specifically imposes upon the trustees the duty of interesting themselves in the welfare and education of the children named as beneficiaries. To that end the trustees are directed "in the exercise . . . of their various powers"

"to use their own best discretion;" the children "under the supervision of said trustees" are to receive proper support and maintenance in accordance with their station in life, and a thorough education "so that they may go forth into life when they become of age thoroughly fitted and equipped to carry out the great responsibilities which may be thrown upon them;" and the trustees must see to it that the moneys set aside for the children are applied "in such a manner as to make the broad purposes of this Trust, so far as relates to said children, practical and complete." After these statements of the general purpose of the trust, follows the provision that, beginning with the death of the donor, "I direct" that designated yearly sums for the period until Helen Hartley Geer is ten years old "may be set aside" by the trustees, "which may be paid by them," that is, the trustees, for the support, maintenance and education of the children; and the phrase "may be set aside and paid for said purposes" is used with reference to the yearly sums designated for the period between the time when Helen Hartley Geer is ten years old and that when she becomes fifteen. It is to be noted in this connection that the direction is not that the money is to be paid to the children, but that it shall be expended by the trustees for their support, maintenance and education. The donor's purpose that the children be properly fitted for the "great responsibilities which may be thrown upon them" might well be best served by withholding some of the money provided. See *Bridgeport Trust Co.* v. *Bartholomew,* 90 Conn. 517, 522, 97 Atl. 758. Reading the provisions as a whole, we have no doubt that the donor intended the trustees to use their discretion in expending the money for the support and education of the children, spending the whole of the yearly sum designated or such portion of it as they should deem proper;

that the word "direct" was used to express the general duty intended to be imposed upon the trustees with reference to the yearly sums designated and not the specific duty to expend the entire amount provided for each child; and that the word "may" was used in the permissive sense, not as the equivalent of "shall." The trustees have, therefore, a discretion whether they shall expend for the support, maintenance and education of each child the entire sum designated for any year.

The intent of the donor being to have the Mead children share "as equal beneficiaries under said trust" as regards income as well as principal, it follows that for some period at least after the death of the donor they are entitled to have expended for their support, maintenance and education by the trustees, in the exercise of the same discretion directed to be used as regards the Geer children, yearly sums not exceeding those provided for the latter. When the donor died Helen Hartley Geer was slightly over sixteen years of age, and under the second agreement she and her brother were entitled to have expended by the trustees for their benefit a sum not exceeding $15,000 each year until she became twenty-one on March 2d, 1939. The donor did not provide that the amount of the yearly sums for her and her brother should be the same for each of them while of the same age. The increases provided for Francis Geer, Jr., were not to take effect when he reached the ages of ten and fifteen, but when his sister did, about a year and a half later, and as regards him were not to cease when he reached the age of twenty-one, but when she did. This indicates that the donor regarded equality between them as requiring that each have the benefit of the yearly sums provided over the same period of time, regardless of their exact ages. We cannot find any warrant in the terms of the

agreement for a construction which would so far depart from the expressed intent of the donor as would authorize the trustees to "set aside" for each of the Mead children a yearly sum of $10,000 until he or she reaches the age of fifteen years and thereafter a yearly sum of $15,000 until he or she reaches the age of twenty-one. Equality of benefit among the Mead and the Geer children, as the matter apparently lay in the mind of the donor, requires that the trustees "set aside" $15,000 a year for each of them from the death of the donor until Helen Hartley Geer becomes twenty-one, to be expended by the trustees in accordance with the provisions of the second agreement concerning the yearly sum provided therein for the Geer children.

That brings us to the question as to the proper distribution of any excess of income above that needed for the setting aside of the yearly sums provided until Helen Hartley Geer becomes twenty-one and of the income which will accrue upon the principal after that time. Whether that income shall accumulate and become a part of the principal or shall be distributed to the Geer children must depend upon the intent of the donor as disclosed by the terms of the agreements and her plan as shown by them. *New Haven Bank* v. *Hubinger,* 117 Conn. 417, 420, 167 Atl. 914. In both the first and second agreements the donor used the word "accumulate" in the phrase "accumulate, pay over and apply" the income to or for the use of her daughter, Grace Hartley Jenkins, but the word as there used obviously had no reference to the holding of income for distribution at some future day as a part of or in connection with the principal of the fund. Both agreements concluded with a provision that "wherever the word 'principal' is used it shall include accumulations, if any." In the first agreement the donor made a complete disposition of income for the full term the

14

trust might continue. The concluding clause of that agreement could not, therefore, be taken as indicating any general intent on the part of the donor that income should accumulate. The only place in that agreement where the word "principal" is used in such a way as to make possibly applicable the concluding clause is the provision as to the disposition of the "principal" at the termination of the trust; and, if the concluding clause is to be regarded as anything more than formal, it could only serve to increase the "principal" then disposed of by any income which had not been distributed. The repetition in the second agreement of the same clause can hardly be regarded as indicating any more of an intent to have income accumulate than it did in the first.

Confirmatory of this is the provision in the second agreement that if either of the Geer children should die between the ages of twenty-one and twenty-five leaving a child or children, such child or children should take the parent's place in the distribution of "all moneys, income or principal, or both," for these words indicate an intent to have payments of income continue after Helen Hartley Geer becomes twenty-one. Moreover, while the trustees are given power either to retain the investments received from the donor or to sell them and are authorized to invest and re-invest the net proceeds of such sales, nowhere is any power given them to invest principal otherwise than as it may result from the sale of securities, and this indicates that the donor did not expect that they would hold any such material sum arising from an accumulation of income as they would have in their hands should they hold the income, as she contemplated they might do, from the time when Helen Hartley Geer becomes twenty-one until the termination of the trust, which might not be until 1945. Again, when

in the third agreement the donor provided that the Mead children should be "equal beneficiaries under said trust," she must have known that when Helen Hartley Geer becomes twenty-one they will be a little over fifteen and sixteen, respectively, and she must have realized that the period from that time until they became twenty-one was the time when some provision for their maintenance and education would be most useful and advantageous to them. That provision could only come from the use of income from the fund for them over this period. While in the second agreement the word "principal" occurs several times, in only two instances is it used in such a way that the concluding clause could be applicable, instances analogous to the use of that word in the first agreement to which we have pointed as the only one to which the provision could have applied. These instances are the provision for the payment of $50,000 "on account of principal" to each of the Geer children when he or she becomes twenty-one and those for the ultimate payment of "all the balance of principal" due him or her.

There is nothing in the instrument to suggest that any income not needed for the yearly sums provided until Helen Hartley Geer becomes twenty-one should be held and distributed as income to the grandchildren when she reaches that age or that any part of the sum set aside for a particular child which is not used for him or her should be retained for the benefit of that child. Any excess of income accruing before Helen Hartley Geer reaches the age of twenty-one becomes part of the principal as a general fund to be administered for the benefit of all. See *Hewitt* v. *Hicock,* 96 Conn. 176, 113 Atl. 172; *Hoadley* v. *Beardsley,* 89 Conn. 270, 282, 93 Atl. 535; *Holcombe* v. *Spencer,* 82 Conn. 532, 74 Atl. 409; *Townsend* v. *Wilson,* 77 Conn. 411, 59 Atl. 417. The income of the fund accruing

after Helen Hartley Geer becomes twenty-one and until its final distribution should be distributed among the four grandchildren in such a way as to produce equality among them.

The trustees suggest that the agreement be so construed as to authorize them to divide the fund into four equal parts as of the death of the donor and to set aside one such part for each of the four grandchildren, the payments from income and the distribution of principal to be made from the shares so set aside. As the answer to this suggestion is necessarily involved in the solution of other problems raised by the interrogatories, we next consider it. It would prolong our discussion too much to refer to the provisions of the agreement in detail, except to point out that the use of the word "share" with reference to the interest of each of the grandchildren in the fund has little significance. *Gorham* v. *Gorham,* 99 Conn. 187, 193, 121 Atl. 349. Our conclusion is that the donor did not contemplate any division of the fund until the time came when any child would receive the balance of the principal due him or her. See *Sterling* v. *Ives,* 78 Conn. 498, 62 Atl. 948; *Johnson* v. *Webber,* 65 Conn. 501, 511, 33 Atl. 506. Such a division would involve a strong probability of inequality as regards the four grandchildren, for it could hardly come about that each share would produce the same income or have the same value when the time for distribution of the principal comes; it would be justified only as a necessary method for administering the trust; and no such necessity appears. It is true that if and when payments from the principal are made to each grandchild as he or she reaches the age of twenty-one, such payments should be regarded in preserving an equality among the children in the subsequent distribution of income, so that each should receive such a part as is in proportion to

his or her remaining interest in the fund; but that presents no obstacle which does not appear to be easily surmountable. The fund should therefore be retained as an entirety. When any one of the grandchildren receives his share of the principal in full, that share should be paid to him, but the remainder should still be kept as a single fund. See *Gorham* v. *Gorham,* supra; *State Bank & Trust Co.* v. *Nolan,* 103 Conn. 308, 130 Atl. 483.

As Helen Hartley Geer is now seventeen years old, the yearly sum provided for each of the Geer children under the second agreement, and so under the third agreement for each of the Mead children, is $15,000. The stipulation of facts states that the annual income of the fund is at present about $50,000 a year, and hence there is insufficient income to provide the sums designated for all four grandchildren in full. In the provision for the yearly payments in the second agreement it is not specified that they shall be paid from income. But, as all parties seem to agree, the other provisions of the instrument make clear the intent of the donor that the yearly payments shall be made from income alone and not from principal. That being so, should the income prove insufficient to make the designated yearly provision for all the grandchildren, the amount to be set aside for each should be reduced pro rata, for only so could equality be preserved among them. There is, however, nothing in the terms of the agreement to prevent the trustees from making up any deficiency from any excess of income which may have accumulated from previous years. *Jaretzki* v. *Strong,* 98 Conn. 357, 367, 119 Atl. 353; *Hewitt* v. *Hicock,* 96 Conn. 176, 113 Atl. 172. The concluding provision of the first and second agreement that the word "principal" shall include accumulations, if any, does not mean that at the conclusion of each year any income

in excess of the yearly payments provided must be added at once to principal but that such excess shall be regarded as a part of the principal when the time for making the payment of $50,000 to any grandchild comes and thereafter in the distribution of income and the ultimate payment to each of his full share of the principal.

An equal sharing in the benefits of the fund under the same conditions and limitations required in the third agreement necessarily means that each of the Mead children, when he or she reaches the age of twenty-one, is entitled to the benefit of the provision for the payment of the sum of $50,000 "on account of principal" and when he or she becomes twenty-five, to the benefit of the provision that he or she may receive the "balance of principal" due him or her. Each of the four grandchildren is entitled in the aggregate to receive an equal one-fourth part of the principal of the fund. With reference to the $50,000 payments, the trustees are "authorized" to make them. The word "authorized" has the natural significance of a grant of power rather than the imposition of a duty, and that this is the meaning to be given it here is clear from the context. The making of the ultimate payments to any child of the "balance" of the share in the principal when he or she arrives at the age of twenty-five is expressly placed in the discretion of the trustees; yet the final provision for the distribution of principal at the termination of the period during which the trust may continue is conditioned upon the fact that the trust has not already been terminated by the payment in full "in accordance with the authority hereinbefore conferred," the "authority" referred to being the discretionary power given the trustees with reference to the payment of the share of each when he or she reaches the age of twenty-five. In the mind of the

donor "authority" evidently implied discretion to give or withhold; and when the trustees were "authorized" to make the $50,000 payments, they were given power to make or withhold them in their discretion.

To the questions propounded to us, stated in the footnote to this opinion (p. 20, infra), we answer as follows: To the first, that Helen Hartley Mead and Edwin Winter Mead are each entitled to have set aside for them a yearly sum of $15,000 from the income of the trust fund from the donor's death until Helen Hartley Geer reaches the age of twenty-one, so much thereof to be used by the trustees for his or her maintenance, support and education as in the exercise of their discretion they deem proper, in accordance with the provisions of the agreement of January 13th, 1921, except as hereinafter limited. To the second, we answer that the trustees may, if in the exercise of their discretion they deem it proper to do so, pay to each of the Mead children when he or she reaches the age of twenty-one the sum of $50,000 on account of his or her share in the principal; in the exercise of a like discretion they may pay to him or her the remainder of his or her share in the principal when he or she reaches the age of twenty-five if that is before the termination of the period of the trust; and, unless his or her share has already been paid in full, the trustees must pay any sum remaining due to him or her at the end of the period fixed for the trust. To the third, we answer that any surplus of income not used under the provision for setting aside yearly sums for the four grandchildren until Helen Hartley Geer reaches the age of twenty-one and not used in any subsequent year to make up a deficiency in the income of that year to provide sufficient money for such yearly sums, shall be added to the principal when Helen Hartley Geer does arrive at that age. To the fourth, we answer that the yearly

sums provided can only be taken from income and unless any deficiency can be made up as provided in the answer to the third question, the sum to be set aside for each grandchild must be reduced pro rata. To the fifth, we answer that the trustees have discretion to expend the whole of the yearly sum set aside for each grandchild or to withhold any part of it, as may be best adapted to accomplish the purposes of the donor stated in the agreement of January 13th, 1921. To the sixth, we answer that the trustees have a discretion to make or withhold the payments provided when each grandchild reaches the age of twenty-one and twenty-five, respectively. To the seventh, we answer that any income withheld from a beneficiary and not used as stated in the answer to the third question above becomes a part of the principal of the fund regarded as an entirety when Helen Hartley Geer becomes twenty-one years of age. To the eighth, we answer that the withholding by the trustees of any payment provided to be made from the principal of the fund leaves the sum so withheld as a part of that fund regarded as an entirety. To the ninth, we answer that after Helen Hartley Geer becomes twenty-one the income from the fund is to be distributed among such of the grandchildren as have not received their full share of the principal, so as to preserve equality among them, due allowance being made for any portion of the principal theretofore paid to any grandchild, until the termination of the trust.

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.

*First.* Whether under the provisions of said trust or trusts the grandchildren, Helen Hartley Mead and Edwin Winter Mead, take any part of the income from said trust or trusts, and, if so, at what times and in what amounts?

*Second.* Whether under the provisions of said trust or trusts the

grandchildren, Helen Hartley Mead and Edwin Winter Mead, take any part of the principal of said trust or trusts, and, if so, at what times and in what amounts?

*Third.* What disposition should be made of the surplus of income, if any, from said trust or trusts?

*Fourth.* If the income from said trust or trusts is, at any time insufficient to meet and pay the respective yearly shares to the entitled beneficiaries shall the deficiency in said yearly shares be made up out of principal, and, if not, then how and in what proportions shall income received be paid?

*Fifth.* Have the Trustees discretion to withhold any or all income payable to any of the entitled beneficiaries under the provisions of said trust or trusts?

*Sixth.* Have the trustees discretion to withhold any or all principal payable to any of the entitled beneficiaries under the provisions of said trust or trusts?

*Seventh.* If the Trustees have discretion to withhold income from a beneficiary then, whether or not income so withheld shall thereafter be held for the benefit of such beneficiary, or for the benefit of all beneficiaries?

*Eighth.* If the Trustees have discretion to withhold principal from a beneficiary then, whether or not principal so withheld shall thereafter be held for the benefit of such beneficiary, or for the benefit of all beneficiaries?

*Ninth.* What payments are to be made to each beneficiary dating from the date of Helen Hartley Geer's twenty-first birthday to the date when each beneficiary reaches his or her respective twenty-fifth birthday?