## CENTRAL HANOVER BANK & TRUST COMPANY, TRUSTEE

*vs.*

## JAMES A. TROWBRIDGE, JR., ET AL.

Superior Court          Fairfield County          File No. 67208

MEMORANDUM FILED MAY 31, 1944.

*Pullman & Comley*, of Bridgeport, for the Plaintiff.

*Durey, Pierson & Comley*, of Stamford, and *Hirschberg, Pettengill, Strong & Deming*, of Greenwich, for the Defendants.

McEVOY, J. In this action the plaintiff, as successor trustee under the will of James A. Trowbridge, late of Darien, Connecticut, deceased, seeks the advice of this court as to the construction of certain parts of that will as to the meaning of which the plaintiff is in doubt.

The plaintiff's chief uncertainty is as to the relative meaning and construction of paragraph 9 of the will. The 9th paragraph of the will provides, in part, as follows: "I authorize my Executors and Trustees in their discretion to retain any property or securities which I may own at the time of my death as a proper investment of trust funds. I also authorize them

to invest the trust funds in such securities and property as are now allowed by the laws of the State of New York for savings bank investments."

The careful wording of this paragraph shows the intent of the testator that the trustees be limited in their action in the matter of investments. This would indicate the reliance of the testator upon his own judgment in making these investments and his care to see to it that the trustees would be protected in retaining any of the property or securities which he owned at the time of his death. There is no indication, in any part of the will, that, at the time of the making of the will, the testator anticipated death.

Clearly the testator would have no estimate of the time during which he would live and to attribute to him an intention to authorize investments in such securities as would, subsequently, be allowed by the laws of the State of New York for savings bank investment would be to attribute to him a speculation as to the future which was not at all characteristic of him — as disclosed by the evidence.

The wording of the paragraph just quoted is consistent with the wording of part of Exhibit B, the statement of the Superintendent of Banks of the State of New York with reference to the purpose of lists of securities and particularly that part of it which reads: "The legality of investments....depends entirely upon the condition of the corporation or municipality issuing the bonds under consideration which may vary so greatly from time to time that a bond which was a legal investment on a fixed date may not be a legal investment on the following day. No one can state positively that a particular bond is a legal investment on a certain date, unless he has exact knowledge of the facts on the day with reference to which the statement is made, and, in these days of rapidly changing conditions, it will be obviously improper for the Trustees of a savings bank to rely solely upon this list, the list being issued only for their protection and not with the intent that they shall place their sole reliance upon it."

The wording of this statement and the wording of the 9th paragraph of the will is so similar as to indicate, not only that the testator was thoroughly familiar with the wording of Exhibit B, but that it was his design that his trustees should be governed by that advice.

The meaning and application of the word "now" seems to have occasioned the main doubt of the plaintiff as to its proper course of action.

In the briefs, and in arguments, there was a sharp conflict between the claims of the parties.

One side argues, and claims, that the word "now" as used by the testator means the date of the death of the testator, May 30, 1931, and not the date of the day when the will was exccuted by the testator, October 25, 1921.

The claim that the word "now" means the date of the death of the testator is based on the general rule that the will speaks as of the date when it becomes effective which is, of course, on the date of the death of the testator. The corollary of this is that the will is ambulatory and speaks only from the date of the testator's death.

Exhibit D is a statement of the "securities now on hand which were held by the decedent at the date of his death, May 30, 1931." That list contains 68 items of various securities.

In paragraph 9 of the original complaint it was alleged that: "It is no longer possible for the plaintiff, by investment in the securities of said list, to obtain a fair and reasonable income from the principal of said trust fund." That complaint was dated August 24, 1943. Subsequently, on January 28, 1944, a substituted complaint was filed (paper No. 7 in the file). The original paragraph 9 of the original complaint is omitted from the substituted complaint. There is no similar allegation in the substituted complaint.

From this original inclusion of the allegations of the then paragraph 9, and its subsequent omission from the substituted complaint, it seems reasonable to infer that, whatever may have been the theoretical situation at the time that the original complaint was drawn and filed it was, at least, considered unnecessary to insert such an allegation in the substituted complaint. In any event such claim, by way of allegation, is not now before this court to be considered in the determination of the issues presented.

In paragraphs 4 and 5 of the substituted complaint it is set out, substantially, that the trust fund is invested in securities which, on May 31, 1941, totalled $1,920,423.99, and that,

for the period from May 31, 1941, to and including August 31, 1942, the income from the trust fund was $90,777.36.

It would appear, therefore, that the securities, in which the trust fund was invested, at the date of the substituted complaint, yielded an annual income of more than $360,000.

Returning to the consideration of the meaning and application of the word "now", in *Gold vs. Judson,* 21 Conn. 615, 622, our Supreme Court said: "Wherever a testator refers to an actually existing state of things, his language should be held as referring to the date of the will, and not to his death, as this is then a prospective event. Such, it is clear, is the construction of the word *now.* Thus, to the descendants now living of a person, means those living at the date of the will, exclusive of such as come into being between that period and the death of the testator....And the same is true, where the word *now* is combined with a term which could not have full effect according to its technical import, unless used prospectively, as in the case of a devise to the *heir m-le* of the body of A, *now living*; under which the heir apparent of A, living at the date of the will, has been held to be entitled.... So in the description of the thing given, and the person or persons to whom given, it may be such as to embrace only the specific thing or persons described; as thus, the stock I *now* hold in Hartford Bank, or the children of my brother *already* born. But if the language is general, not specific, and not limited, the will speaks from the testator's death, and of course disposes of whatever property the testator had, at that time, or to such persons as answer the description."

"It is of course true that a will speaks as of the date of the testator's death, for it does not speak at all until then, but the cases cited sufficiently illustrate the fact that a specific legacy of shares of stock owned by the testator at the date of the will necessarily refers to the shares then existing." *Fidelity Title & Trust Co. vs. Young,* 101 Conn. 359, 369.

"Now" means at the present time. *Walker vs. Dwelle,* 187 Ia. 1384, 1392, 175 N.W. 957, 960.

The term "now" signifies time present. *Chapman vs. Holmes,* 10 N.J.L. 20, 26.

The word "now", in its ordinary acceptation, means at this time, or at the present moment, or at a time contemporaneous with something done. It relates to actual existence of the

fact at the time and place mentioned. *Pike vs. Kennedy,* 15 Ore. 420, 426, 15 Pac. 637, 640.

The word "now" as used in a will devising land now owned by the testator, refers to the date of the will, not to the time of the testator's death. *Quinn vs. Hardenbrook,* 54 N.Y. 83.

"Now" as used in a will reciting that it was the testator's intention to give to each of certain children an equal portion, and that the children "now" reside in a certain place, refers to the date of the will. *Jones vs. Hunt,* 96 Tenn. 369, 374, 34 S.W. 693, 694.

A reference in a will to the "farm on which I now live" refers to the existing state of things at the date of the will. *Mueller vs. Buenger,* 184 Mo. 458, 478, 83 S.W. 458, 465.

In one brief it is suggested that the testator, Mr. Trowbridge, during the last ten-year period of his life invested many hundreds of thousands of dollars and that, in making these investments, he did not adhere to the list of investments promulgated by the banking commissioner of the State of New York in 1921. Then this question is asked: can it, with logic, be said that he intended to impose a restriction upon his trustee which he himself disregarded?

The answer to this would seem to be simple and it is that Mr. Trowbridge, from his long experience in handling his own affairs and those of others, did have a confidence in his own judgment which he did not have in that of others and the whole context of his will would indicate that he did intend to restrict his trustee (formerly trustees) to the investment of his money in funds which were legal investments at the time that he drew the will in 1921 and that he did not intend that his trustee should have power to act in any other way.

The evidence introduced upon the trial was in a very narrow compass but, in confirmation this theory, one of the most important phases of it was the testimony that Mr. Trowbridge feared that the authorities would lower the standards of requisite investments and it would seem that the provisions of the will providing that the investments be made in accordance with the standards existing at the time that he drew the will were entirely in point and consistent with that theory. It would seem to be a fair inference that he regarded that restricting provision as essential to the preservation of his estate, after his decease, in the hands of his trustees.

Part (b) of paragraph 9 of the substituted complaint raises the question as to whether the provisions of the 9th paragraph of the will are permissive or mandatory.

The case of *Brown vs. Mead,* 121 Conn. 1, is cited as an authority that the words "I also authorize them to invest the trust funds" are to be taken as merely permissive and not mandatory.

It should be observed that the context of the two wills is entirely different. In *Brown vs. Mead* the trustees were instructed, in the first place, to look after the general welfare, maintenance and education of the grandchildren. They were further authorized, in the exercise of their discretion, to pay $50,000 on account of the principal when the children should become 21 years of age and further when the children became 25 years of age it was emphasized that the trustees "may, at their discretion" pay them the balance of the principal due under the trust. In that case, it was further provided that, in case the trust should not be terminated by payment in full in accordance with the authority given, then it was to expire in 25 years from 1920 and the balance was then to be paid over.

The general tenor of the trust instrument in the case of *Brown vs. Mead* was one vesting discretion in the trustees and, in reality, relying upon their personal ability and experience to carry out the terms of the trust — in the exercise of their discretion. The wording of the instant will does not indicate that the testator, in the instant case, had the same opinion as to the ability of his trustees nor the same willingness to entrust the administration of his affairs to their unlimited discretion.

The questions propounded by the plaintiff, trustee in this action, are answered as follows:

9-(A)   Yes. The language is mandatory.

9-(B)   No.

9-(C)   The word "now" refers to the date of the execution of the will, October 25, 1921.

9-(D)   No.

9-(E)   The answer to this question is well expressed in one of the briefs as follows: "It is not the date of issue which is the test of the legality of the security. The test is whether the circumstances surrounding the issuance of the security ac-

cord with the requirements set forth in the law of 1921." The answer to this question is "yes", provided that the securities were issued in accordance with the law in existence on the date of the will, October 25, 1921.

No costs are to be taxed in this action.

Fees of counsel shall be subsequently fixed and incorporated in and as part of this judgment.