NORTHEAST ELECTRONICS CORPORATION *v.* ROYAL
ASSOCIATES ET AL.

BOGDANSKI, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued May 6—decision released July 14, 1981

*William B. Rush,* with whom was *Peter D. Clark,* for the appellant (plaintiff).

*Gerald F. Stevens,* with whom, on the brief, was *Leo P. Carroll,* for the appellees (named defendant et al.).

*Andrew J. Broughel,* for the appellee (defendant city of Milford).

PARSKEY, J. This appeal arises from an action instituted by the plaintiff Northeast Electronics Corporation (Northeast) seeking to enjoin the defendant city of Milford from selling, conveying, and transferring certain property owned by the city to the defendant Royal Associates (Royal).

Northeast claims that the city exceeded its power by authorizing the sale of the subject property without due regard for the purchase request made by Northeast.

Northeast owns property in Milford adjacent to the subject property. Royal owns the property on the other side of, and adjacent to, the subject property. Northeast formally requested by way of a letter dated September 9, 1977, and directed to the city's then director of community development, that it be considered for the purchase of the subject property. This letter was forwarded to city attorney George J. Martelon and city mayor Joel R. Baldwin, among others. Royal's request for consideration in the same matter arose during September or October of 1977 in conversation with Mayor Baldwin.

At its regular meeting on October 3, 1977, the board of aldermen authorized the city attorney to negotiate the sale of the subject property with the adjacent owners.[1] On November 14, 1977, the board of aldermen approved a resolution authorizing the sale of the property to Royal. The trial court ruled that the plaintiff failed to sustain its burden of showing fraud, corruption, improper motives or influences, plain disregard of duty, gross abuse of power, or violation of law, and rendered judgment for the defendants. Northeast claims on appeal that the city's failure to pursue the request by Northeast constitutes a violation of its "self-

---

[1] The content of the authorization appears in the November 14, 1977 board resolution: "Whereas, The Board of Aldermen has authorized the City Attorney to negotiate the sale of this property with the adjacent owners; and Whereas, these negotiations have resulted in a formal offer to purchase being made by one of the adjacent owners . . . ."

imposed condition" of negotiation with all adjacent landowners prior to sale, set forth in the October 3 authorization, and therefore constitutes a violation of law. We agree with the trial court that the plaintiff has failed to sustain its burden of proving that the city acted improperly in authorizing the sale of the property to Royal. The October 3 authorization was a permissive grant to consider the matter of sale of the property. See *Brown* v. *Mead,* 121 Conn. 1, 18, 183 A. 27 (1936). Contrary to the plaintiff's request, we will not read the words used as a limitation on the manner in which the sale was to be carried out.

We do not dispute the plaintiff's contention that the board of aldermen had the power to establish procedures for the management of city business. Article III, § 6 of the Milford city charter entrusts the legislative power to the board of aldermen.[2] We cannot, however, deny the board a degree of flexibility to accomplish its stated goals. "It is not for the courts to say how many, if any, alternative methods of accomplishing a desired result must be investigated or considered by municipal authorities before they decide on one particular method of proceeding. . . . [A]t some point a definite decision must be made. . . . Much must be left to the discretion of the local authorities." *McAdam* v. *Sheldon,* 153 Conn. 278, 282–83, 216 A.2d 193 (1965). The parties appear to be in agreement and the trial court has found that the October 3 authorization need not be read literally to require that negotiations be conducted exclusively by the

---

[2] Article III, § 9 of the Milford city charter, also cited in the plaintiff's brief, appears to govern rules of procedure during board meetings rather than to impose restrictions on the manner in which officials may conduct city affairs.

city attorney. It is procedurally regular in the city of Milford for the mayor to conduct negotiations for the sale of commercially zoned, city-owned property. We will not read the October 3 authorization to require any particular level of consideration or ultimate award. City authorities would be prevented from ever reaching a decision if required to pursue with continued equal vigor interests expressed by all landowners adjacent to the subject property.

Were we to give the resolution the literal construction urged by the plaintiff and therefore conclude that it mandated negotiations with all the adjoining property owners, the result would still be the same. So long as it was not restricted by the municipal charter, the action of the common council in approving the sale to Royal cured whatever lack of authority existed in the negotiating process. *State ex rel. Gaski* v. *Basile,* 174 Conn. 36, 40, 381 A.2d 547 (1977); *Loomis* v. *Fifth School District,* 109 Conn. 700, 703–704, 145 A. 571 (1929).

Courts will interfere with legislative decisions made by municipalities only where the party seeking review can characterize the legislative act as illegal, fraudulent, or corrupt. *Whitney* v. *New Haven,* 58 Conn. 450, 457, 20 A. 666 (1890). When "such bodies are acting within the limits of the powers conferred upon them, and in due form of law, the right of courts to supervise, review or restrain is exceedingly limited." Id. Accord *Pizzuto* v. *Newington,* 174 Conn. 282, 286, 386 A.2d 238 (1978); *McAdam* v. *Sheldon,* supra, 281. We decline to equate the exercise of discretion by city officials with decisions made without regard for "due form of law." The board of aldermen and the

mayor acted within the formal requirements imposed by the city charter. See Milford city charter, art. III, §§ 2, 6. The plaintiff does not suggest that the property was sold for less than fair market value or that the authorization of sale was made without knowledge of Northeast's request. The plaintiff has failed to show any improper motive, which is necessary to warrant judicial intervention to set aside legislative acts by a municipality. See *Baker* v. *Kerrigan,* 149 Conn. 596, 601, 183 A.2d 268 (1962). The extent to which competing offers will be considered is within the realm of discretion exercisable by the proper city authorities.

We have stated in *Kyser* v. *Zoning Board of Appeals,* 155 Conn. 236, 251–52, 230 A.2d 595 (1967), that municipal authorities should administer discretionary powers in a manner which avoids weakening public confidence in government. Flexibility in the process of decisionmaking, however, and a decision in favor of one party rather than the other, do not constitute ethical breaches. Absent a clear showing of fraud, illegality, or corruption, courts will not intervene in the legislative process. *LaTorre* v. *Hartford,* 167 Conn. 1, 9, 355 A.2d 101 (1974). The later act of the legislature controls if inconsistent with the former act, as long as the later act is not unconstitutional. *Patterson* v. *Dempsey,* 152 Conn. 431, 439, 207 A.2d 739 (1965). The plaintiff's dissatisfaction with the exercise of discretion by city authorities can be expressed through the political process.

There is no error.

In this opinion the other judges concurred.