ELI WHITNEY & OTHERS *vs.* THE CITY OF NEW HAVEN & OTHERS.

New Haven & Fairfield Cos., Jan. T., 1890. ANDREWS, C. J., CARPENTER, LOOMIS, TORRANCE and PRENTICE, Js.

The court of common council of the city of New Haven passed an order for the demolition and removal of a building on the public green that had formerly been used as a state house, the interest of the state in which had been relinquished to and become vested in the city. Upon a suit brought by a large number of residents of the city, describing

Whitney v. City of New Haven.

themselves as citizens and tax-payers of the city, for an injunction against the execution of the order by the city auditor, who was directed by it to contract for the removal of the building, it was held—

1. That as the plaintiffs were in court only as citizens and tax-payers of the city, and had alleged no present interest in or threatened damage to the county, the rights of the county in the building, if any, could not be considered, although it was made a party defendant.

2. That the matter being one the determination of which fell within the powers of the common council and involved the exercise of discretion and judgment, and there being nothing to show an intentional violation of duty on its part, the court had no power to interfere unless the council had acted informally or illegally.

3. That the fact that the question of the demolition of the building had, by a vote of a former council, been submitted to a popular vote, and a majority had voted against its demolition, did not render illegal the action of the council in ordering its demolition.

4. That its action was not rendered informal or illegal by the fact that it was had at a special meeting called by the mayor, in the warning of which another matter was mentioned as to be acted upon and the matter of the removal of this building was not mentioned; neither the statute nor the city charter restricting its power to act to matters mentioned in the call for the meeting, and the general rule as to meetings of towns and other communities having no application to meetings of such a body as a court of common council.

5. That the provision of the city charter that " no vote shall be taken upon any resolution until the same has been referred to and reported upon by an appropriate committee or one of the standing boards of commissioners," was sufficiently observed by a reference of the " whole matter of the state house" to a special committee, and by the adoption by the council of the resolution reported by the committee with a recommendation that it be passed.

6. That the provision of the city charter requiring an annual classified appropriation by the council of moneys deemed necessary to defray the expenses of the city for the year ensuing and forbidding any officer or board to exceed such appropriations, did not debar the council from acting upon subjects not provided for and from expenditures involved in such action; the object of such provision being not to restrict the action of the city but to restrain the action of its servants.

7. That no such restriction upon the power of the council was created by the provision of Gen. Statutes, § 378, for the punishment of any officer or agent of a community who should authorize or contract for the expenditure of money in excess of appropriations; the statute applying only to cases of specific appropriations for a particular purpose.

8. That the provision of the charter that the board of public works should execute all orders of the council in reference to the streets and parks of the city, did not affect the right of the council to make the city auditor its agent for executing this order; the fact that this building chanced to be upon a public park not bringing the matter of its removal within the jurisdiction of that board, and the council having a

right in the absence of any restriction to select any agent that it pleased for the execution of the order.

[Argued January 23d—decided March 17th, 1890.]

Suit for an injunction; brought to the Superior Court in New Haven County. The plaintiffs were citizens and taxpayers of the city of New Haven, and the injunction prayed for was against the demolition and removal of a building on the public green of the city that had formerly been used as a state house, but the interest of the state in which had become vested in the city, by the relinquishment to it by the state in 1876 of all its rights in the building. The court of common council of the city had ordered its demolition, and had made the city auditor its agent for carrying out the order. The city and city auditor, and the county of New Haven, which the plaintiff claimed had some interest in the building, were made parties defendant. The county did not appear. The other defendants demurred to the complaint, and the case was reserved upon the demurrer for the advice of this court.

*S. E. Baldwin*, for the plaintiffs.

1. The rights of the county. The old state house was owned originally by the state, county, and city. After 1876 it was owned by the county and city; the city owning the legal title and the county having an equitable interest. *City of Hartford* v. *County of Hartford*, 49 Conn., 554, 560. How then can the city, by demolishing the building, deprive the county of its right of occupancy? It was a right of substantial value.

2. The courts can prevent waste by municipal authorities. —(1) Misappropriation of city funds. In this case the city auditor was about to make, and afterwards did make, a contract involving, first, an unauthorized expenditure of the city funds, and, second, an enormous waste of the city property. *New London* v. *Brainard*, 22 Conn., 552, 556. It appeared that "it would cost a large sum, probably from $5,000 to $10,000, to demolish the building, remove the

material, and grade the site, and no moneys were appropriated for the purpose by the court of common council in making up their annual estimates for this year, nor since;" and that the city charter forbids any expenditure or incurring any liability for any expenditure, in excess of the annual appropriations. *Samis* v. *King*, 40 Conn., 298, 311.—(2) Waste of city property. The common council had no more right to pull down the state house than it would have to pull down the city hall. Both buildings, and every building the city owned, needed annual repairs, and to pull down a valuable edifice because it needed exterior repairs "to preserve its beauty," was sheer waste, for which no justification is shown. The city charter measures the power of the common council. A by-law, authorized by the charter, very properly gives the power of control over the "parks and works of a public nature" to the board of public works, a small body fitted to deal with such subjects. To this board the repairs of the state house, standing as it did in the central park of the city, properly belonged, and the matter could not be confided to any other authority. *Althen* v. *Kelly*, 32 Minn., 280, 283. The allegation is that the order complained of "is a gross breach of trust, in directing the destruction of valuable public property, and in disregarding the vote of the freemen, and violating their own chartered duty." Against such a wanton abuse of power, the courts have the right and duty to interpose. *Danbury & Norwalk R. R. Co.* v. *Norwalk*, 37 Conn., 109, 119; *Freeman* v. *Selectmen of New Haven*, 34 Conn., 406. It is only when the law expressly makes the decision of municipal authorities conclusive, that the courts cannot correct their wrongful action. *Selleck* v. *Common Council of South Norwalk*, 40 Conn., 359, 361. Every standing ordinance or by-law is subject to be declared void if the courts deem it unreasonable. *City of New Haven* v. *New Haven Water Co.*, 44 Conn., 105. Much more must any special order, made to meet some particular case, be subject to revision by judicial authority, if it be shown to be unreasonable.

3. The vote of the freemen for repairs. The common

council submitted the question of repairing the state house
to their *cestuis que trustent*, the freemen of the city, for their
decision, for the purpose of bringing it to a final conclusion.
The vote was taken at a lawful city election, and resulted
in favor of repairs by a large majority. The council had
ordered that, in that event, a certain committee should be
constituted to make the repairs up to the limit of $30,000.
After the vote they constituted the committee. They also
laid a tax sufficient to meet, among other estimated expenses,
these expenses of repairs. We submit that the freemen's
vote, thus solemnly taken, confirmed and acted upon, could
not be annulled by the action of another court of common
council, but bound the city and its agents, the common
council and city auditor. The policy of our law is to allow
the people to govern themselves as far as practicable, and to
uphold the doings of public communities at general meetings
of all their members, duly warned, whether their agents may
deem such action wise or unwise. *Dibble* v. *New Haven*, 56
Conn., 199, 201. It is an intolerable mockery to take a
solemn vote of the freemen on an important question, and
then disregard it on the pretense that they do not know the
facts. The common council had decided that $23,400 would
make the necessary repairs. The freemen with this before
them voted to raise the limit to $30,000 ; and now the claim
is that because alterations and repairs which were not neces-
sary might cost over $30,000, therefore the popular decision
can be set aside altogether, and property worth $200,000 ab-
solutely destroyed. *Clarke* v. *Rochester*, 24 Barb., 446 ;
*Lowber* v. *Mayor*, 5 Abb. Pr., 325.

4. The order of the common council was not legally passed.
—(1) There was no reference of the order to a committee.
The charter provides that without unanimous consent, no
measure can be acted upon until it has been referred to an
appropriate committee. The vote of the common council,
in December, 1887, was to repair the building so far as
$30,000 would go, and a committee was appointed to do this.
In April, 1889, " the whole matter of the state house ques-
tion " was referred to a new committee. This naturally sent

to them only the question how best to make the repairs. Their report of a new proposition to tear the building down was therefore a report upon a matter not referred to them, and unanimous consent to its consideration was not had. The vote was therefore void. *Gilman* v. *Milwaukee*, 61 Wis., 588, 594.—(2) The action was not within the warning of the meeting. The meeting of the council was a "special meeting, called only for the purpose of electing a city treasurer." The mayor has a right to convene it "specially." Charter, § 213. No action at such a meeting, therefore, outside of the special warning which the mayor sees fit to give, can be binding.

5. The order requires an illegal expenditure. No appropriation had been made for such an expenditure or contemplated in the annual estimates. The charter, therefore, absolutely forbade it, and forbade incurring "any liability" for it. Our General Statutes, (§ 378), made the proposed contract a criminal offense. Necessarily, therefore, the order was absolutely void. *Halsted* v. *The State*, 41 N. Jer. Law, 552, 586.

6. If the court of common council had had power to authorize the demolition of the state house, it was for them to exercise it either directly or through the board of public works. It was an act requiring discretion, and the expenditure authorized by the order was unlimited. Such a delegation of power to the auditor cannot be supported. *Birdsall* v. *Clark*, 73 N. York, 73; *Day* v. *Green*, 4 Cush., 433; *Hydes* v. *Foyes*, 4 Bush, 464.

*C. R. Ingersoll* and *W. K. Townsend*, for the defendants.

PRENTICE, J. This action involves the validity of a vote of the court of common council of the defendant city authorizing and directing the defendant Lake, its auditor, to procure the demolition and removal of the old state house building located upon the public green in the defendant city, and the propriety of Lake's action pursuant to such vote. The complaint sets out at great length the history of

the location and erection of the building, the release to the
city of the state's interest therein, the use which has been
made of it and to which it was adapted, the acts of the
court of common council and voters of the city which cul-
minated in the order of demolition, and the conduct of Lake
in carrying into effect the order.   The complaint asks for
an injunction restraining the execution of the order and for
damages against the defendant Lake for the destruction of
the building as directed.   Sundry citizens and tax-payers of
the city are plaintiffs, and the city, Lake, and the county of
New Haven are defendants.  No appearance is made on behalf
of the county.   The city and Lake demur to the allegations
of the complaint. .  Various issues are thus raised.   Some of
these are not discussed in the plaintiffs' brief, and are appa-
rently waived.   The remainder may be conveniently grouped
and discussed as counsel for the plaintiffs groups and dis-
cusses them.

The plaintiffs seek relief by virtue of an alleged interest
of the county in the building.   The objections to granting
relief upon this ground are manifest.   The plaintiffs are in
court only as citizens and tax-payers of the city of New
Haven.   Whatever their relations to the county and to the
county treasury may be, they have chosen, and by the alle-
gations of their complaint established, their status in court
as "citizens and tax-payers of the city."

Furthermore, the complaint is singularly silent as to any
present interest in or threatened damage to the county.  The
only allegation of county interest is that contained in the
sixth paragraph, which sets out that the city and county
prior to 1833 together contributed $10,000 towards the con-
struction of the building, and that the county thereby ac-
quired an equitable interest therein.   Whether or not that
interest has continued to exist during the fifty and more
years which have elapsed does not appear.   That the county
has during the last half century had any beneficial interest
in or use of the building is not stated.   That any damage
to the county, or to the plaintiffs as the champions of its
interests, was threatened by the demolition of the building, is

not charged. In fact paragraph 45, which contains the only allegation of threatened damage upon which the action rests, recites only a damage threatened to the plaintiffs as tax-payers of the city.

Again, by statute there exist officials whose duty it is to protect the rights and interests of the county, and a way is provided for actions to be brought to enforce these rights. We fail to discover whence arises the right of these plaint-iffs to come forward and maintain this action in the county's behalf and make the county itself a defendant.

An examination of the complaint makes it apparent that the proceedings were instituted for the relief of the plaint-iffs as citizens and tax-payers of the city of New Haven and by reason of city rights supposed to have been invaded. To that end the complaint was framed and in that aspect its claims are to be judged and determined.

Regarding the complaint as an effort to protect city rights, the first question which arises is as to the power of courts to intervene to restrain the execution of the orders of bodies like courts of common council. The law is well settled. They may interfere to prevent an illegal exercise of power. They may enjoin the exercise of power in an informal or illegal manner. When however such bodies are acting within the limits of the powers conferred upon them, and in due form of law, the right of courts to supervise, review or restrain is exceedingly limited. Courts of common council exercise an authority delegated by the General Assembly. This delegation of power carries with it the corresponding duty, and vests the delegated body with the right and duty to exercise the discretion and judgment incidental to the proper performance of that which is delegated. With the exercise of discretionary powers courts rarely and only for grave reasons interfere. These grave reasons are found only where fraud, corruption, improper motives or influences, plain disregard of duty, gross abuse of power, or violation of law, enter into or characterize the result. Difference in opinion or judgment is never a sufficient ground for inter-ference. High on Injunctions, § 785; Dillon's Municipal

Corporations, §§ 94, 832; *Fellowes* v. *City of New Haven*, 44 Conn., 240; *Dibble* v. *Town of New Haven*, 56 Conn., 199.

The question presented to the court of common council of New Haven as to the advisability of repairing or demolishing the old state house building was one involving discretion and judgment. If in attempting to determine the issue it was acting within the scope of its powers, and was acting in legal form, it follows that the Superior Court cannot supervise or revise its determinations and acts, unless some of the grave reasons above enumerated exist to justify the interference.

The court of common council was plainly acting within its powers. The charter confers upon it the right " to manage, regulate and control the property, real and personal, of the city." Whether it was acting in due form we shall have occasion to see later. Assuming for the present that it was, we have only to look at the complaint to ascertain what it discloses of a state of facts warranting judicial intervention. In paragraph 32 we find an allegation that the action of the council was a "gross breach of trust." If this conclusion were justified by the facts, which are fully set up, the plaintiffs would doubtless be entitled to relief. But this single allegation of a conclusion is not sufficient to save the complaint if the facts from which it was drawn and which are not to be disregarded do not support the conclusion. *Hewison* v. *City of New Haven*, 34 Conn., 138.

Examining these facts we not only find nothing to justify the conclusion that the decision to remove the building was a gross breach of trust, but much to negative that conclusion. The plaintiffs' statement of the issues presented by the state house problem discloses that it was one upon which reasonable and fair minded men might well disagree. The question as to whether the building should be repaired or demolished was one which involved many considerations. The complaint shows that the issue involved fair and by no means plain questions of economy and wise administration. The true policy was not so plain as that only a knave could disregard it, or so manifest as to render either a decision to

repair or to demolish a palpable or gross disregard of the city's interest. The court of common council in the performance of its duty was called upon to meet the issue presented and to determine what should be done. In reaching its conclusion it is not alleged that improper motives, undue influences, or a disregard of duty, moved or actuated any member of the council. For all that appears the decision was fairly and honestly reached. It must therefore stand unless there exist other reasons to render it inoperative or illegal.

One such other reason it is said exists, because the action of the court of common council was not in accord with an expression of the will of the legal voters of the city given in 1887, when the question was by a former council submitted to them. We have already observed that the General Assembly had by the charter of the city cast upon the court of common council the power and duty of determining the policy and conduct of the city as to this building. This power and duty were exclusive. The voters of the city had no share in their exercise. Neither could the court of common council divest itself of them or shift the burden of them to others. Any attempt to do so would have amounted to a breach of the trust confided to it. 1 Dillon's Municipal Corporations, § 96.

If the common council chose for its information to learn the wishes of the people it was perhaps not improper that it should do so. In doing so it might make personal inquiry. It might obtain an expression of the legal voters by ballot. Or it might ask the whole population to express their views. But after all was done and learned it must remain for it to decide and act. It must decide and act upon its own best judgment. The expressed will of the people could not bind or control. The vote of December, 1887, was nothing more than an expression of the preferences of those who voted. It had no binding force upon anybody. It was expression, not action; and the court of common council had the right, and it was its duty, to regard or disregard it as its own judgment in the premises dictated. So far as action

upon the question at issue was concerned it was mere sur-
plusage.

It is again said that the order of the court of common
council was not legally adopted for the reasons—1st, that
the resolution was not referred to a committee; and 2d,
that the meeting of the board of councilmen was not suffi-
ciently warned to enable it to act upon the subject.

The city charter provides that " no vote shall be taken
upon any by-law, ordinance, resolution or other measure in
either body, until the same shall have been referred to and
reported upon by an appropriate committee, or one of the
standing boards of commissioners, unless by unanimous
consent.". It appears from the complaint that " the whole
matter of the state house question " was referred to a spe-
cial committee raised for the purpose, and that the order as
finally adopted was reported *in totidem verbis* by this com-
mittee, with an accompanying report recommending its pass-
age. The whole subject matter in controversy was referred,
and the identical resolution originated and recommended.
Surely the charter provision could require nothing more.

The charter authorizes the court of common council to
provide by ordinance for the warning of its meetings. The
method so ordained is by an order of the mayor directed to
the city sheriff requiring him to warn the members of the
meeting. Regular meetings are provided for at stated
times. Special meetings may be convened by the mayor at
his pleasure. This act of the mayor and sheriff is purely
one of notice. No provision of charter or ordinance requires
information to be given of the matters to be considered.
No statute or charter provision restricts the scope of their
assembled authority to specified subjects. Their powers are
conferred by law. They neither grow out of the warning
nor depend upon its language for their scope. The mayor
is endowed with no such power to restrict or guide their ac-
tion as the rule contended for would confer upon him. He
is given the power to perform the purely ministerial act
of convening the two bodies. When they are assembled
their authority is not of his dictation. They are clothed with

all that which the charter has conferred. The familiar rule of notice as applicable to meetings of towns and communities is one prescribed by statute. It has no application to meetings of governmental representative bodies like courts of common council. Their status and right to act are more allied to those of the governing bodies of private corporations and of the General Assembly itself and are governed by the same rules. Cooley's Constitutional Limitations, p. 155; *Savings Bank* v. *Davis*, 8 Conn., 200; *Westbrook's Appeal from R. R. Comrs.*, 57 Conn., 95.

The meeting of the board of councilmen at which the order of removal was passed was a special one. The mayor's order convening it contained the statement that it was called for the purpose of electing a city treasurer. This portion of the order under the principles we have stated was mere surplusage. If it was intended by it to restrict the action of the meeting it was futile. If its purpose was to advise members of the special occasion which prompted the call of a special meeting or to inform them of some matter of peculiar importance or interest which might come up for action, it may have served this useful purpose. It certainly served no other.

It is further claimed that this order was illegal because it involved an illegal expenditure. The charter calls for an annual classified appropriation by the court of common council of moneys deemed necessary to defray the expenses of the city in its various departments and for its various purposes for the year next ensuing. It is forbidden that any city or department officer or board exceed these appropriations. This prohibition is plainly for the protection of the city against its officers and agents. Its purpose was not to debar the city itself from action upon subjects not foreseen when the annual appropriations are made, and from expenditures which may be involved in such action. The office of the appropriations is not to restrict the action of the city within the limits prescribed by them, but to restrain the action of its servants and the language is carefully chosen to this end.

Section 378 of the General Statutes is relied upon as establishing the illegality of the order. This section provides for the punishment of an agent or executive officer of any community who shall wilfully authorize or contract for the expenditure of any money or the creation of any debt for any purpose in excess of appropriations. This statute it will be noticed carefully limits its application to cases where specific appropriations have been made for a particular purpose. It is not pertinent to the circumstances under consideration. Here no appropriation was made. There was therefore none to exceed. The object of the statute is clear and its language explicit. Its purpose was to limit public officers and agents in their expenditures to appropriations. Its aim, like that of the charter provision cited above, was to protect public corporations from the lavishness of their officials. It did not aim to, and does not, prohibit communities from authorizing work to be done or expenditures incurred without an antecedent specific appropriation. If a community chooses to make an appropriation and thus protect itself, the law then comes to its aid and punishes him who wilfully disregards the limit fixed.

It is objected to the order that it contains an unlawful delegation of power. The city auditor was directed to remove the building. It is said that the charter limited the city in its execution of the order to the agency of the board of public works. In the absence of restrictive words in the charter it is plain that the council in this purely ministerial matter could have acted through its agent, and that it was free to choose the agent. But it is contended that the court of common council was restricted in its choice of agency, since the charter provided that the board of public works should execute all orders of the court of common council in reference to the streets, sidewalks, crosswalks, sewers, gutters and parks of the city, and in reference to the laying out and construction of new ones, and since the building in question chanced to be located upon a city park. We cannot accede to this claim. Plainly it was not intended to confer upon the board of public works authority over city buildings. No

jurisdiction of that nature is anywhere in terms conferred. Other public buildings are not by the charter placed under the care of this board. If this one formed an exception to the rule, it was solely by reason of the mere fact of location. No words, intentions or analogies contained in or derivable from the charter furnish any foundation for the exception. If this board was the only agency competent to execute an order of removal, it was likewise the only one competent to execute any order with reference to the building. Plainly we think the term "park" in this connection was not intended, and should not be construed to extend, to embrace any public building which may be located upon one. The order in question did not relate to the park as such. It related to a city building which chanced to be located upon it, and which may fairly be said not to have been comprehended in the subject matter of the exclusive jurisdiction of the board of public works.

The record discloses a motion on the part of the defendants to require the plaintiffs to amend their complaint by setting out at length the report of the committee referred to in paragraph 24 of the complaint, and this court is asked to advise the Superior Court whether the motion ought to be granted. In deciding the issues presented we have not deemed the contents of the proposed amendment material. Furthermore, we fail to discover upon what ground the plaintiffs should be made to thus amplify their complaint.

The Superior Court is therefore advised that the motion to amplify the complaint ought to be denied, and that the complaint is insufficient.

In this opinion the other judges concurred.