DOMINIC LaTORRE *v.* CITY OF HARTFORD ET AL.

HOUSE, C. J., COTTER, SHAPIRO, MACDONALD and BOGDANSKI, JS.

Argued June 6—decision released July 23, 1974

*Thomas P. Heslin,* special counsel, with whom, on the brief, was *Richard M. Cosgrove,* deputy corporation counsel, for the appellant (named defendant).

*Frank A. Francis,* with whom was *Seymour L. Kroopnick,* for the appellee (plaintiff).

HOUSE, C. J.    This appeal was taken by the defendant city of Hartford from a judgment of the Superior Court vacating the action of the court of common council of that city establishing, by ordinance on January 3, 1972, new street, building, curb and sidewalk lines on Grove Street in Hartford.

The following preliminary facts were found by the court:    For the past twenty years, the city of Hartford has had the goal of widening most of the older downtown streets.    The city has already accomplished the widening of Columbus Boulevard, Market Street, Kinsley Street and State Street,

which streets are in the area of Grove Street, and has a continuing program for the future widening of Trumbull Street and another area of Columbus Boulevard. Starting in 1959, the city engineering staff planned the widening of Grove Street because of its narrowness and the resulting difficulty it presents to traffic. The city engineer determined that it was not feasible to widen Grove Street on the north side owing to the existence of certain structures which were deemed to be too close to the existing north line of the street.

In 1964, the city engineer notified The Travelers Insurance Company[1] (hereinafter referred to as Travelers), the owner of much of the land on the south side of Grove Street, of the city's plan to widen the street on that side. In addition to the property owned by Travelers, the proposed widening of Grove Street also included the entire parcel of land in which the plaintiff owns a one-half interest. The plaintiff conducts a retail poultry business and slaughterhouse on this parcel situated on the southwesterly corner of Grove Street and Columbus Boulevard, abutting on the west side the property owned by Travelers.

In 1969, the city engineer wrote to Travelers defining the proposed Grove Street widening and requesting that the company take the planned widening into consideration in any development of its land adjoining Grove Street. Pursuant to the request of the city, Travelers did build its new office building forty feet back from the old street line. In order to facilitate the city's project, Trav-

---

[1] Travelers was named as a codefendant with the city of Hartford in the plaintiff's original writ, summons and complaint but, on its own motion, was dropped as a party defendant.

elers also offered to convey to the city, for a nominal sum, the necessary property it owned on the south side of Grove Street.

The city of Hartford is authorized "to lay out, construct, reconstruct, alter . . . streets . . ."; Hartford City Charter, c. II, § 2 (a) ; 25 Spec. Laws 37, No. 30; and to open and widen streets; id., § 2 (f). On January 3, 1972, the court of common council passed an ordinance, as required for any public work or improvement; id., c. XI, § 3; 29 Spec. Acts 349, No. 401; establishing the new street line to widen Grove Street.

Purporting to act in accordance with the appeal procedure set forth in chapter XI, § 3 of the Hartford City Charter,[2] the plaintiff appealed to the Superior Court in Hartford County seeking by a substitute complaint a declaratory judgment determining: (1) whether the ordinance was null and void, (2) whether the city "has the right to condemn property for a private individual," (3) whether it is equitable to take the plaintiff's property when open land is available on the north side of Grove Street, and, in addition, seeking an injunction against the taking of the plaintiff's property by the defendant city.

The court concluded that an appeal from the action of the court of common council was not an independent civil action but rather a continuation of proceedings before that body, and that since the only issue before the court was the legality of the

---

[2] This section provides, in pertinent part: "Any owner of real estate within the assessment area as determined by the council may, at any time within thirty days after the passage of such ordinance, appeal to the superior court for Hartford County on the sole question of the right of the city to proceed with such work or improvement."

action taken by the court of common council, a declaratory judgment and injunctive relief were unnecessary and improper, the only relief required being a judgment that the action of the court of common council be vacated. The court further concluded that two of the councilmen who voted for the adoption of the ordinance were disqualified from voting on the question of its adoption and that their disqualification rendered invalid the action of the court of common council in adopting the ordinance. On the basis of these conclusions the court rendered judgment vacating the action of the court of common council in establishing new street, building, curb and sidewalk lines on Grove Street. It is from this judgment that the defendant city has appealed.

The defendant's assignment of errors addressed to the conclusions of the court directly raises the question which is decisive of the merits of this appeal—whether two of the members of the court of common council were disqualified from voting on the question of the adoption of the ordinance which provided for the widening of Grove Street so that their affirmative votes rendered the adoption of the ordinance invalid.

Relevant to our consideration of this question are several other uncontested findings of the trial court. All requisite formalities required for the passage of the ordinance were satisfied. The city's "conflict of interest" ordinance; Hartford Municipal Code § 2-141; is not applicable to an ordinance widening Grove Street. Councilman George Levine was and is associated with a law firm which at times represents Travelers. Councilman Roger B. Ladd, in addition to being a general insurance agent for The Security-Connecticut Insurance Group, is an insur-

ance agent for Travelers, which company aided him in securing an accident and health insurance license from the state. In over twenty years in business he has received only one commission from Travelers, in 1969. None of the councilmen acted out of improper motives.

The court further concluded that the widening of public streets is essentially a legislative question, and it is for the court of common council acting as a legislative body of the city to determine whether public convenience and necessity require the widening of Grove Street and its extent and location; that the taking of the plaintiff's property was for a public purpose; that the incidental benefit to Travelers did not make the widening other than a taking for a public purpose; that none of the councilmen permitted any consideration to intrude into the deliberations and action other than what in his sound judgment was in the best interest of the city; and that there was no bad faith, clear abuse of power or plain disregard of duty by the court of common council in enacting the Grove Street widening ordinance.

Despite these findings the Superior Court concluded that councilmen Ladd and Levine were disqualified from voting on a matter affecting Travelers' property interests and that their disqualification rendered invalid the action of the court of common council in approving the ordinance.

"We can properly turn to the memorandum of decision to ascertain the grounds upon which the court acted. *Grievance Committee* v. *Rottner,* 152 Conn. 59, 64, 203 A.2d 82; *Molk* v. *Micklewright,* 151 Conn. 606, 608, 201 A.2d 183; Maltbie, Conn. App. Proc. § 152." *National Broadcasting Co.* v. *Rose,*

153 Conn. 219, 226, 215 A.2d 123. We find there a statement of the basis for the decision of the court: "The issue then boils down to this: was there anything about the contemporary relationship of any of these councilmen to Travelers as to create the appearance of divided loyalty and therefore a disqualifying factor under the strict and celsitudinous standards of *Low*." The reference is to the decision of this court in *Low* v. *Madison,* 135 Conn. 1, 60 A.2d 774. That case involved a contested application to a zoning commission for a zone change in which the husband of the applicant sat as a member of the commission. After the public hearing, he informed the other members of the use his wife intended to make of the property and then voted in favor of her application when his favorable vote was necessary for its approval. As this court stated: "Public office is a trust conferred by public authority for a public purpose. . . . His status forbids the public officer from placing himself in a position where his private interest conflicts with his public duty. The good faith of the official is of no moment because it is the policy of the law to keep him so far from temptation as to insure the exercise of unselfish public interest. He must not be permitted to place himself in a position in which personal interest may conflict with his public duty." *Low* v. *Madison,* supra, 8. This court held that the husband could not with propriety vote upon his wife's zoning application and, since the change purportedly made depended upon his participation, the action of the zoning commission was invalid.

Following the decision in *Low* v. *Madison,* supra, the General Assembly, in 1951, adopted what is now § 8-11 of the General Statutes which provides in pertinent part that "[n]o member of any zoning

commission or board and no member of any zoning board of appeals shall participate in the hearing or decision of the board or commission of which he is a member upon any matter in which he is directly or indirectly interested in a personal or financial sense." "This court has had repeated occasion to reaffirm the principle, laid down in *Low* v. *Madison,* supra, that public policy requires that members of such public boards cannot be permitted to place themselves in a position in which personal interest may conflict with public duty." *Furtney* v. *Zoning Commission,* 159 Conn. 585, 592, 271 A.2d 319.

This court has consistently applied the standards enunciated in *Low* v. *Madison,* supra, to zoning boards and commissions, and to public officials acting in administrative or quasi-judicial capacities, and has held disqualified those whose interests or relationships have created the appearance of possible partiality. Nevertheless, with a due regard for the legislative magistracy and with a reluctance to involve the courts in political controversies, and in the review and revision of many, if not all, major controversial decisions of the legislative or executive authorities of a municipality, the same standard, desirable as it may be, has not been applied in the judicial review of municipal legislative decisions. *McAdam* v. *Sheldon,* 153 Conn. 278, 281, 216 A.2d 193. As was stated in the *McAdam* case (p. 281): "The rule for judicial review of municipal legislative decisions as stated in *Whitney* v. *New Haven,* 58 Conn. 450, 457, 20 A. 666, is controlling. See *Baker* v. *Kerrigan* . . . [149 Conn. 596, 601, 183 A.2d 268]; *Peterson* v. *Norwalk,* 150 Conn. 366, 375, 190 A.2d 33. When municipal authorities are acting within the limits of the formal powers conferred upon them and in due form of law, the right

of courts to supervise, review or restrain them is necessarily exceedingly limited. In part, this stems from the constitutional separation of the legislative, executive and judicial functions and powers. See cases such as *Malmo's Appeal,* 72 Conn. 1, 4, 43 A. 485. And where, as here, the municipal authorities act in accordance with formal requirements, courts will interfere only 'where fraud, corruption, improper motives or influences, plain disregard of duty, gross abuse of power, or violation of law, enter into or characterize' the action taken. *Whitney* v. *New Haven,* supra. . . . This seems to be the general rule. 62 C.J.S., Municipal Corporations, §§ 199, 201; 13 McQuillin, Municipal Corporations (3d Ed.) §§ 37.03, 37.26; 18 id. (3d Ed. Rev.) § 52.21." See also 56 Am. Jur. 2d, Municipal Corporations, § 393; and note, 32 A.L.R. 1517.

Since the trial court concluded that the court of common council was acting in a proper legislative capacity in adopting the ordinance to widen Grove Street; that the ordinance was enacted for a public purpose; that none of the councilmen acted out of improper motives or permitted any consideration to intrude into the deliberations and actions other than what in his sound judgment was in the best interest of the city; and that there was no bad faith, clear abuse of power or plain disregard of duty by the court of common council in enacting the Grove Street widening ordinance; we conclude that it erred in vacating the action of the court of common council.

There is error and the case is remanded to the Superior Court with direction to dismiss the plaintiff's appeal.

In this opinion the other judges concurred.