# CANDLEWOOD HILLS TAX DISTRICT *v.* PETER MEDINA ET AL.
## (AC 33564)

DiPentima, C. J., and Alvord and Bishop, Js.

Argued December 10, 2012—officially released June 11, 2013

*Adam J. Cohen,* for the appellants (named defendant et al.)

*Joseph L. Gegeny,* for the appellee (plaintiff).

*Opinion*

BISHOP, J. The defendants, former board members and residents of the plaintiff, Candlewood Hills Tax District, appeal from the judgment of the trial court

declaring invalid actions taken by the defendants to reduce the boundaries of the district containing the defendants' property.[1] The defendants claim that (1) the court improperly declared the boundary reduction invalid despite finding compliance with the statutory procedure, and (2) the court erroneously found that the defendants owed fiduciary duties to the district and breached these duties by calling the referendum on the boundary reduction.[2] We reverse the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. The plaintiff is a special taxing district originally created in 1971, pursuant to General Statutes §§ 7-324 through 7-329, for a residential neighborhood known as Candlewood Hills, in the town of New Fairfield. The plaintiff's bylaws provide that the purpose of the district is to maintain the roads within the boundaries of the district. The plaintiff is governed by a nine member board of directors (board), whose members are elected from the residents of the district.

For many years, residents of the district who lived on portions of Candle Hill Road, Linda Lane, Carola Lane and Squantz View Drive had been unsatisfied with the allocation of the tax monies they paid to the district.

---

[1] The defendants are the five former members of the board of directors, Gregory Cross, Rosie Cross, Thomas Wahlig, Donna Wahlig and John Benicewicz, who own property in the excluded area. In addition, the plaintiff also named as defendants the remaining property owners in the excluded area. On appeal, twenty-nine of the defendants who, individually or jointly, own eighteen of the affected properties have joined in this appeal. The other persons named as defendants are not parties to this appeal. For simplicity, in this opinion we refer to the five former members of the board of directors for the district as the defendants.

[2] The defendants also claim that the court improperly admitted into evidence and relied on lay opinion testimony. We do not address this claim in view of our conclusion that the court improperly declared the boundary reduction invalid.

In 2008, three residents of Squantz View Drive, the defendants Gregory Cross, Thomas Wahlig and John Benicewicz, drafted a letter demanding that the board cooperate in releasing their street from the district, with the result that they would no longer be subject to the tax responsibilities of the district. These residents brought the letter to two monthly meetings of the board but were informed that no new business could be considered until several vacancies on the board were filled. At a third meeting on June 19, 2008, a request was made by the board president, Raffaele Martino, for volunteers to fill the vacant seats. Five residents of Squantz View Drive, the defendants Gregory Cross, Rosie Cross, Thomas Wahlig, Donna Wahlig and John Benicewicz, three of whom had written the previous demand letter, volunteered for the open positions and were duly elected.

At the meeting of the board that convened that evening after the election, the defendants introduced their previous letter demanding removal of their street from the district's boundaries during the new business portion of the meeting. No action was taken by the board on the matter that evening. Subsequently, the defendants asked Martino to call a special meeting to discuss the boundary reduction and to list the issue on the agenda of the next board meeting; he refused both requests. At the July 17, 2008 board meeting, the defendants again raised the boundary reduction issue during the new business portion of the meeting. After a " 'lively debate' " regarding the complaints of the residents residing on Squantz View Drive and two other areas of the district, the board, by a bare majority vote, passed three resolutions for the exclusion of specific locales from the district.[3] All of the votes in favor of the three resolutions came from the five defendants who lived

---

[3] The specific locales to be excluded included Squantz View Drive and Carola Lane, and certain portions of Candle Hill Road and Linda Lane.

on Squantz View Drive. The resolutions in favor of exclusion of specific locales also authorized a referendum to be held at a special meeting to determine whether the residents of the identified locales wished to reduce the district's boundaries by removing these areas from the district. The announcement of the referendum was highly contentious within the district and two petitions were circulated. One sought to remove the defendants from the board, and the other sought to allow all the residents of the district to vote on the referendum, regardless of whether they lived in the specific locales under consideration for removal from the district. Both petitions were rejected by the district clerk on the ground that the requested actions were illegal.

The referendum held on August 14, 2008, was of such sufficient public moment that the location of the vote had to be changed to accommodate the high volume of persons who attended, and a police officer was placed on duty to observe. Most of the eligible voters in the areas subject to the referendum attended the meeting. They voted unanimously to reduce the boundaries of the district by removal of their respective streets from the district. At a subsequent board meeting, the defendants who resided in the areas removed from the district were replaced with residents who remained in the district. The successor board then commenced this action on behalf of the district.

The plaintiff filed this declaratory judgment action, seeking a judicial determination as to whether the prior board properly reduced the district's boundaries. In its operative complaint, the plaintiff alleged that, prior to their election to the board, the defendants had failed to make a good faith disclosure of their intention to reduce the plaintiff's geographical area and improperly put their own interests in excluding themselves from

taxation ahead of the district's best interests. In addition, the plaintiff alleged that the defendants violated General Statutes § 7-325 (b), which provides in relevant part: "Any district may enlarge or reduce its territorial limits if the board of directors of the district approves a resolution proposing such an enlargement or reduction . . . provided: (1) The board of directors of the district shall call a meeting of voters of the area proposed to be included or excluded, which meeting shall be held within thirty days of the board of directors' approval of such resolution and shall be called by publication of a written notice of the same, signed by the members of the board of directors of the district, at least fourteen days before the time fixed for such meeting in two successive issues of some newspaper published or circulated in such town . . . [and] (2) a two-thirds majority of the voters of the area proposed to be included or excluded in attendance at such meeting . . . vote in favor of joining or leaving such district . . . ."[4] In response to the plaintiff's complaint, the defendants filed a two count counterclaim, alleging that they had properly followed statutory dictates and seeking a declaration that the boundary reduction process and the outcome of the referendum were legally proper and binding.

On June 7, 2011, following a trial to the court, the court issued a memorandum of decision in which it found in favor of the plaintiff. The court found, inter alia, that the tax district was a quasi-municipal corporation, and, as such, both the district and its board members were akin to municipal officers and had narrow authority only as prescribed by statute. The court further found that, as municipal officers, the defendants had a fiduciary duty to the public whom they served, and

---

[4] It is particularly noteworthy that, in accordance with § 7-325 (b), only the voters from the affected locales within the district are entitled to vote on a proposed reduction of the district's territorial boundaries.

they, therefore, could not serve on a matter in which they had a conflict of interest. The court found that the defendants breached their fiduciary duty "by pursuing [their] selfish interests [and] ignoring the public good." As for the boundary reduction, the court stated that the board "exceeded its authority in reducing [the district's] geographical area." Accordingly, the court rendered judgment "invalidating the action of the 2008–2009 board reducing the geographical area of the plaintiff district."

On June 29, 2011, the defendants filed a motion for articulation. The court, however, denied the motion for articulation, and the defendants subsequently filed a motion for review with this court. On October 19, 2011, this court granted the defendants' motion to review and ordered the trial court to articulate: (1) the burden of proof it used and on which party that burden was imposed; (2) the factual basis for finding that the board breached its fiduciary duty to the district; and (3) the factual basis for finding that the board violated the procedures set forth in § 7-325 (b). On May 2, 2012, the court issued an articulation, clarifying that while the board did not violate the procedures set forth in § 7-325 (b), the defendants, as municipal officers, owed a fiduciary duty to the public whom they served and "found that the defendants breached their fiduciary duty by acting in derogation of the plaintiff's collective interests."

On appeal, the question we must answer is whether a special taxing district's reduction of its boundaries that followed the applicable statutory procedure, is nevertheless invalid because the district's board members owed a fiduciary duty to the residents of the district and breached this duty by voting for a referendum when it was opposed by the majority of the district's residents. Since all of the claims presented in this appeal are

questions of law, our review is plenary. *Biller Associates* v. *Peterken*, 269 Conn. 716, 721–22, 849 A.2d 847 (2004) ("[T]he determination of whether a duty exists between individuals is a question of law. . . . Only if a duty is found to exist does the trier of fact go on to determine whether the defendant has violated that duty. . . . When the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." [Internal quotation marks omitted.]). We first address the defendants' claim that the boundary reduction was valid under the applicable statutory procedure and then turn our attention to their claim regarding the court's determination that the defendants owed a fiduciary duty to the district.

I

The defendants first claim that the court improperly failed to declare the boundary reduction valid because the court found that the board did not violate the statutory procedure for boundary reduction, § 7-325 (b), and did not find the requisite fraud, corruption or similar misconduct necessary to warrant judicial interference into municipal legislative decisions. We agree.

We begin our analysis of the defendants' claim with a brief overview of the relevant law regarding municipal corporations. "A legally created tax district is a quasi-municipal corporation. . . . Quasi-municipal corporations are governed by the law applicable to municipal corporations." (Citations omitted; internal quotation marks omitted.) *Campanelli* v. *Candlewood Hills Tax District*, 126 Conn. App. 135, 139–40, 10 A.3d 1073 (2011). The rule for judicial review of municipal legislative decisions is found in *McAdam* v. *Sheldon*, 153 Conn. 278, 216 A.2d 193 (1965), which follows the seminal case of *Whitney* v. *New Haven*, 58 Conn. 450, 20 A. 666

(1890). "When municipal authorities are acting within the limits of the formal powers conferred upon them and in due form of law, the right of courts to supervise, review or restrain them is necessarily exceedingly limited. In part, this stems from the constitutional separation of the legislative, executive and judicial functions and powers. . . . And where . . . the municipal authorities act in accordance with formal requirements, courts will interfere only 'where fraud, corruption, improper motives or influences, plain disregard of duty, gross abuse of power, or violation of law, enter into or characterize' the action taken. . . . Mere differences in opinion among municipal officers or members of the municipal electorate are never a sufficient ground for judicial interference. . . . Even without consideration of constitutional infirmities, any broader rule would potentially involve the courts in the review and revision of many, if not all, major controversial decisions of the legislative or executive authorities of a municipality." (Citations omitted.) *McAdam* v. *Sheldon*, supra, 281.

"The wisdom, expediency, or advisability of changing municipal boundaries is not subject to review. A reviewing court may not inquire into the motives of municipal authorities or others with respect to annexation or detachment of municipal areas, unless the proceedings are tainted by malice, fraud, corruption, or gross abuse of discretion. Rather, review of a municipality's fulfillment of statutory requirements for annexation is governed by assessment of compliance or noncompliance with those requirements . . . . The reviewing court will not substitute its discretion or judgment for that of the . . . municipal body whose judgment is being reviewed, especially upon the question of the sufficiency of reasons for the annexation or detachment of territory." 2A E. McQuillin, Municipal Corporations (3d Ed. Rev. 2006) § 7.41, pp. 19–25.

The challenged actions of the defendants in passing resolutions to eliminate certain areas from the district and submitting these resolutions to a vote of affected residents were municipal legislative decisions. The court's inquiry, therefore, should have been limited to whether the defendants acted in accordance with the statutory procedure for reducing the boundaries of the district and whether, in voting in favor of a resolution to reduce the district and to conduct a referendum on the resolution, the defendants were guilty of any form of misconduct. As noted, the reduction of a special taxing district's boundaries is governed by § 7-325 (b), which proscribes a very specific set of steps for a district to follow when reducing its boundaries. Here, the court specifically held that the board did not violate § 7-325 (b).[5] Thus, once concluding that the statutory

[5] We note that in the court's articulation, it did allude to testimony regarding "procedural deficiencies in the board's actions," specifically that the proposed reduction never appeared on a publicly available agenda and that decisions involving finances other than the annual budget normally went to a community-wide vote. In light of the court's very specific finding that there was no violation of § 7-325 (b), we read these findings as underpinning the court's conclusion that the board was acting in derogation of the district's best interests and not as contrary to its finding of statutory compliance.

We also note that the plaintiff alleges that the defendants failed to follow the notice requirement in § 7-325 (b) when they moved the location of the August 12, 2008 meeting during which the vote took place, and, therefore, the reduction should be invalid on this basis alone. While the plaintiff does not assert, specifically, that this claim provides an alternate basis for affirmance pursuant to Practice Book § 63-4 (a) (1), we could consider it as such if the plaintiff had, in fact, briefed the issue. See, e.g., *Connecticut Ins. Guaranty Assn.* v. *Fontaine*, 278 Conn. 779, 784 n.4, 900 A.2d 18 (2006) (alternate ground may be reviewed despite failure to comply with Practice Book § 63-4 [a] [1] when all parties briefed claim such that no party prejudiced by review). We decline to review this claim, however, as it is inadequately briefed. The plaintiff merely asserts, without any supporting legal argument, that by moving the meeting location and not providing notice of the change in the newspaper, the board was no longer acting within the purview of § 7-325 (b). "[A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *Paoletta* v. *Anchor Reef Club at Branford, LLC*, 123 Conn. App. 402, 406, 1 A.3d 1238, cert. denied, 298 Conn. 931, 5 A.3d 491 (2010).

procedure was followed, the court's inquiry should have been limited to whether "fraud, corruption, improper motives, or influences, plain disregard of duty, gross abuse of power, or violation of law, enter into or characterize the action taken." (Internal quotation marks omitted.) *LaTorre* v. *Hartford*, 167 Conn. 1, 9, 355 A.2d 101 (1974). Here, the court made no finding regarding any of the special circumstances that could justify judicial interference in the municipal legislative function. The defendants passed resolutions authorizing the residents of three areas in the district to vote pursuant to § 7-325 (b). The plaintiff did not allege that these resolutions were tainted by fraud, corruption or similar misconduct, but, rather, it argued, and the court agreed, that the vote was invalid because it went against the wishes of the remainder of the district's residents. The court was critical of the defendants, in this regard, in its finding that the defendants improperly voted in favor of the resolutions when they were aware that the majority of the taxing district opposed the boundary reduction and that they failed to disclose to the public their intention to seek the reduction of the district's boundaries prior to their election to the board.[6]

While it is clear from the record that political rancor existed as a result of the defendants seeking a reduction in the district's boundaries, the resolution of these issues was determined legislatively in a manner authorized by statute, and, as previously noted, the role of the court in reviewing a municipal legislative determination is a limited one. See *McAdam* v. *Sheldon*, supra,

---

[6] The court also predicated its ruling on several other findings, including that the defendants did not immediately replace a resigning board member, made a dissenting board member feel " 'stonewalled,' " refused to certify a recall petition and did not allow the entire taxing district to vote on the boundary reduction. Upon our review of the record, none of these findings justified judicial interference into the board's actions because none of the conduct cited by the court violated the dictates of § 7-325 (b) and the process embarked on by the defendants did not entail fraud, corruption or similar misconduct.

153 Conn. 281. ("[m]ere differences in opinion among . . . members of the municipal electorate are never a sufficient ground for judicial interference"). "When the considerations entering into the decision of a local authority are fairly debatable, courts cannot substitute their judgment of local needs for that of the local authority." *Peterson* v. *Norwalk*, 150 Conn. 366, 378, 190 A.2d 33 (1963); see *Robb* v. *Watertown*, Superior Court, judicial district of Waterbury, Docket No. 085166 (November 21, 1990) (2 Conn. L. Rptr. 830, 832) ("[f]or the courts to frustrate the majority's wishes in the absence of compelling reasons is to denigrate the power of the coequal legislative and executive branches of government and undermine the democratic principles upon which our system of government is based"). That the defendants, as members of the board, chose to enact an unpopular or controversial course of action does not mean that their actions constituted misconduct. Therefore, the issue of whether the remaining residents of the district were displeased by the resolutions and subsequent referendum is legally irrelevant to whether the defendants' actions are invalid.

Further, whether the defendants failed to disclose to the public, prior to their election to the board, their intention to seek the reduction of the district's boundaries does not affect the validity of the board's actions. While the trial court may have disapproved of the political methods by which the defendants obtained the boundary reduction, we see no legal reason that public officials should have to disclose all of their political intentions to the electorate before election in order to avoid invalidation of their acts once elected. "This court will not disturb a discretionary action of local government absent a showing of fraud or a gross abuse of discretion." *Double I Limited Partnership* v. *Glastonbury*, 14 Conn. App. 77, 81, 540 A.2d 81, cert. denied, 208 Conn. 802, 545 A.2d 1100 (1988). "We have stated

. . . that municipal authorities should administer discretionary powers in a manner which avoids weakening public confidence in government. Flexibility in the process of decisionmaking, however, and a decision in favor of one party rather than the other, do not constitute ethical breaches. Absent a clear showing of fraud, illegality, or corruption, courts will not intervene in the legislative process. . . . [A party's] dissatisfaction with the exercise of discretion by city authorities can be expressed through the political process." (Citations omitted.) *Northeast Electronics Corp.* v. *Royal Associates*, 184 Conn. 589, 593, 440 A.2d 239 (1981).

Accordingly, in light of the court's finding that the defendants followed the statutory requirements for reducing the district's boundaries, a finding that has ample support in the record, and a record that reflects that the defendants' actions did not constitute fraud, corruption or other misconduct, we conclude that the court improperly declared the boundary reduction invalid.

II

The defendants next claim that the court improperly held that they owed fiduciary duties to the district and breached these duties by calling the referendum on the boundary reduction while they were burdened by a conflict of interest. Specifically, the defendants argue that a municipal officer's duties cannot be correctly characterized as fiduciary, which is a status typically reserved for more direct and intimate relationships than that enjoyed by a public office holder. We agree with the defendants.

The following additional facts are relevant to our analysis of this claim. The court stated in its memorandum of decision that "Connecticut case law makes clear that municipal officers owe a fiduciary duty to the public whom they serve and that they cannot serve on a

matter in which they have a conflict of interest." In its articulation, the court "found that the defendants breached their fiduciary duty by acting in derogation of the plaintiff's collective interests . . . ." When the court issued its articulation, it indicated that it based its conclusion that the defendants had a conflict of interest in violation of their fiduciary duty, on several factual findings. Specifically, the court relied on testimony by other members of the board that, during 2008–2009, in their opinion, the defendants were acting against the best interests of the entire district by reducing the district's tax income and simultaneously were promoting their own personal interests by eliminating their tax obligations to the district. The court also found significant that the defendants were "well aware of the community's opposition" to the boundary reduction, finding that "[t]he board knew full well that its actions were vigorously opposed by the taxing district community . . . yet it proceeded to vote to affirm the resolution." (Citation omitted.)

We begin with a discussion of fiduciary relationships. "It is axiomatic that a party cannot breach a fiduciary duty to another party unless a fiduciary relationship exists between them." *Biller Associates* v. *Peterken*, supra, 269 Conn. 723. "[A] fiduciary or confidential relationship is characterized by a *unique degree of trust and confidence between the parties,* one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." (Emphasis added; internal quotation marks omitted.) *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.,* 255 Conn. 20, 38, 761 A.2d 1268 (2000). "Although [our Supreme] [C]ourt has refrained from defining a fiduciary relationship in precise detail and in such a manner as to exclude new situations . . . we have recognized that not all business relationships implicate the duty of a fiduciary. . . . In particular instances, certain relationships, as a matter

of law, do not impose upon either party the duty of a fiduciary." (Citations omitted; internal quotation marks omitted.) Id. "The fact that one party trusts another is not dispositive of whether a fiduciary relationship exists . . . rather, proof of a fiduciary duty requires an evidentiary showing of a unique degree of trust and confidence between the parties such that the [defendant] undertook to act primarily for the benefit of the plaintiff." (Citation omitted; internal quotation marks omitted.) *Golek* v. *Saint Mary's Hospital, Inc.,* 133 Conn. App. 182, 197, 34 A.3d 452 (2012). "All fiduciary relationships, to some degree, [require] confidence of one in another and a certain inequity or dependence arising from weakness of age, mental strength, business intelligence, knowledge of facts involved, or other conditions which give one an advantage over the other." (Internal quotation marks omitted.) *Murphy* v. *Wakelee,* 247 Conn. 396, 407, 721 A.2d 1181 (1998).

The court did not cite to any Connecticut precedent or statutory provision establishing that a municipal officer has a fiduciary relationship with his or her constituents. Instead, the court examined the law of fiduciary relationships, as well as municipal corporation law underscoring the special trust placed in public officials to avoid conflicts of interest, and extrapolated that municipal officers owe fiduciary duties to the public they serve. While our courts have recognized fiduciary relationships in a number of contexts, all have featured circumstances in which the fiduciary was in a dominant position, such as an attorney or a trustee, or was under a specific duty to act for the benefit of another, as in the case of business partners or corporate directors. See *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin,* 247 Conn. 48, 56, 717 A.2d 724 (1998) (attorney-client relationship imposes fiduciary duty on attorney); *Katz Corp.* v. *T. H. Canty & Co.,* 168 Conn. 201, 207, 362 A.2d 975 (1975) (officer and director of

corporation owes fiduciary duty to corporation); *Spector* v. *Konover*, 57 Conn. App. 121, 127, 747 A.2d 39 (fiduciary relationship exists between partners), cert. denied, 254 Conn. 913, 759 A.2d 507 (2000).

We have recognized that "[t]he law does not provide a bright line test for determining whether a fiduciary relationship exists, yet courts look to well established principles that are the hallmark of such relationships." *Iacurci* v. *Sax*, 139 Conn. App. 386, 401, 57 A.3d 736 (2012), cert. granted on other grounds, 308 Conn. 910, 61 A.3d 1100 (2013). Here, the parties were not engaged in a relationship of *special trust and confidence* such as that of fiduciaries. Rather, while the defendants stood in their official capacity as representatives of the residents of the taxing district, they did not have a relationship with the general public of the taxing district characterized by a unique degree of trust and confidence associated with a fiduciary. At least one Connecticut trial court decision has addressed this question and similarly concluded that under Connecticut law, government entities, such as taxing districts, do not automatically have a fiduciary duty toward residents. See *Silberstein* v. *54 Hillcrest Park*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-07-5004549-S (November 5, 2010), aff'd on other grounds, 135 Conn. App. 262, 41 A.3d 1147 (2012). In *Silberstein*, the court explained: "This result makes sense because the majority of activities conducted by a government are for the benefit of the public as a whole as opposed to certain individuals. Without a close relationship based on trust and a specific duty to act for another, there cannot be a fiduciary relationship." Id. We agree with the reasoning of the court in *Silberstein* and conclude that, under Connecticut law, municipal officers, such as the defendants, do not owe a fiduciary duty to the public whom they serve except as may be imposed by statute under specific circumstances.

We turn now to address the plaintiff's claim that the defendants' actions establishing the referendum were invalid because they were acting under a conflict of interest. The plaintiff points to the court's citation of *Gaynor-Stafford Industries, Inc.* v. *Water Pollution Control Authority*, 192 Conn. 638, 474 A.2d 752, cert. denied, 469 U.S. 932, 105 S. Ct. 328, 83 L. Ed. 2d 265 (1984), for the authority that when the defendants used their position on the board to remove their properties from the taxing district, they did so under a conflict of interest. In *Gaynor-Stafford Industries, Inc.*, our Supreme Court stated: "We recognize and reaffirm the principle first declared in *Low* v. *Madison*, [135 Conn. 1, 60 A.2d 774 (1948)] that the appearance of impropriety created by a public official's participation in a matter in which he has a pecuniary or personal interest is alone sufficient to require disqualification. This prophylactic rule serves the salutary purposes of promoting public confidence in the fairness of the decision-making process and preventing the public official from placing himself in a position where he might be tempted to breach the public trust bestowed upon him. . . . Whether a particular interest justifies disqualification is necessarily a factual question, for not every interest, no matter how remote and infinitesimal, may be said to possess the likely capacity to tempt the public official to depart from his sworn duty." (Citation omitted; internal quotation marks omitted.) Id., 649–50.

This conflict of interest disqualification rule originally was applied in the context of zoning boards sitting in a quasi-judicial capacity, hearing petitions and making individualized determinations, and ultimately was encapsulated in statutes that apply specifically to zoning boards. See General Statutes §§ 8-11 and 8-21.[7] This

[7] General Statutes 8-11 states in relevant part: "No member of any zoning commission or board and no member of any zoning board of appeals shall participate in the hearing or decision of the board or commission of which he is a member upon any matter in which he is directly or indirectly interested in a personal or financial sense. . . ." General Statutes 8-21 states in relevant

standard has been applied outside of the zoning context to members of a school board of trustees adjudicating an employment termination hearing. See *Petrowski* v. *Norwich Free Academy*, 199 Conn. 231, 241, 506 A.2d 139 (1986). In *LaTorre* v. *Hartford*, supra, 167 Conn. 8–9, however, our Supreme Court held that the conflict of interest standard in *Low*, subsequently applied in *Gaynor-Stafford Industries, Inc.*, and its progeny, is inapplicable to municipal legislative decisions. Instead, under *LaTorre*, the correct standard is to use the more deferential standard set forth in *McAdam*, in which courts will interfere with legislative decisions made by municipalities only where the party seeking review can characterize the legislative act as illegal, fraudulent, or corrupt. See id., 9; see also R. Fuller, 9B Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 47:3, p. 40 ("[t]he conflict of interest rules apply to administrative and quasi-judicial decisions of administrative agencies, and a less strict standard applies to municipal legislative decisions"). The court in *LaTorre* stated: "This court has consistently applied the standards enunciated in *Low* . . . to zoning boards and commissions, and to public officials acting in administrative or quasi-judicial capacities, and had held disqualified those whose interests or relationships have created the appearance of possible partiality. Nevertheless, with a due regard for the legislative magistracy and with a reluctance to involve the courts in political controversies, and in the review and revision of many, if not all, major controversial decisions of the legislative or executive authorities of a municipality, the same standard, desirable as it may be, has not been applied in the judicial review of municipal legislative decisions."

part: "No member of any planning commission shall participate in the hearing or decision of the commission of which he is a member upon any matter in which he is directly or indirectly interested in a personal or financial sense. . . ."

*LaTorre* v. *Hartford,* supra, 8. Under *LaTorre,* the decision challenged here is a municipal legislative decision and, as discussed previously, is entitled to a more deferential standard of review.

Even if we were to examine the defendants' actions under the more stringent standard of *Low,* we would conclude that the defendants were not burdened by a conflict of interest regarding the issue before the board requiring that their actions be invalidated. Here, the defendants' personal interests were mirrored by the similar interests of all the residents of the areas subject to elimination from the district. Like all those residents, the defendants owned homes within one of the three areas proposed to be removed from the district. This personal interest in no way distinguishes the defendants from any of the other residents who were authorized by the resolutions to vote on the referendum. See *State ex rel. Reynolds* v. *Pinkerman,* 63 Conn. 176, 192, 28 A. 110 (1893) ("common parliamentary rule that no member of a legislative assembly shall vote on any question involving his . . . pecuniary interest . . . but . . . only . . . when it is *immediate, particular, and distinct from the public interest*" [emphasis added]). If owning property within a municipality's boundaries could, alone, suffice to disqualify a municipal officer from participating in a legislative decision, a municipality would be incapable of any action. Thus, "[w]hether an interest justifies disqualification is necessarily a factual question and depends upon the circumstances of the particular case. . . . In subjecting those circumstances to careful scrutiny, courts must exercise a great degree of caution. . . . Local governments and school boards would be seriously handicapped if any conceivable interest, no matter how remote and speculative, would require the disqualification of a [public] official." (Citations omitted; internal quotation marks

omitted.) *Petrowski* v. *Norwich Free Academy*, supra, 199 Conn. 242.

It would be extremely illogical and unworkable to hold that the only requirement for holding a position on the board of the taxing district, residence within the district, is the same requirement that would disqualify a board member from making legislative decisions simply because those decisions would affect him or her in the same manner that all residents of the district would be impacted. Here, the defendants advocated on behalf of not only themselves as residents, but on behalf of the owners of thirty-one other properties in the district that were also removed from the district by reason of the district vote on the resolutions. As we discussed previously, the fact that the residents of the taxing district who were not from the affected areas were unhappy with the board's process does not establish that the defendants acted under a conflict of interest, or against the public interest.

The judgment is reversed and the case is remanded with direction to render judgment in favor of the defendants.

In this opinion the other judges concurred.