[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I. FACTS
The plaintiffs appeal the decision of the Willington Planning and Zoning Commission (commission) granting the application of Bruce Hice for a zone change and special permit to construct a "commercial building lab/office" in an R-80 residential zone. The facts pertinent to this appeal are as follows:
On September 3, 1997, Hice applied to the commission for a zone change of a 4.6 acre parcel of property, owned by George and Madelyn Valley and located on Village Road, Willington, from the existing R-80 zone to a Designed Neighborhood Commercial (DNC), zone. (Return of Record for Appeal [ROR], Exhibit 1: Application for Zone Change). On September 6, 1997, Hice applied to the commission for a special permit to construct a "commercial building lab/office" on the subject property. (ROR, Exhibit 2: Application for Special Permit). Both the zone change application and the special permit application were signed in the appropriate spaces by the owners and Hice. (ROR, Exhibit 1; ROR, Exhibit 2). In addition, both applications described the proposed use of the land and buildings as "a 5,000 square foot commercial building, parking and utilities."[1] (ROR, Exhibit 1; ROR, Exhibit 2).
On September 24, 1997, Hice's professional engineer, Hank Torcellini, of Gardner Peterson Associates, sent a letter of transmittal to the town of Willington sanitarian seeking approval of the disposal system to be used at the Village Road Property. (ROR, Exhibit 5: Letter of Transmittal). On October 7, 1997, the town sanitarian approved the disposal system, with minor technical modifications. (ROR, Exhibit 6: Letter of Approval from Willington Sanitarian).
The zone change and special permit applications were received by the commission at its September 16, 1997 meeting, at which time the commission scheduled an October 19, 1997 site walk and an October 21, 1997 public hearing. (ROR, Exhibit 7A: Commission Minutes, October 16, 1997, p. 2). The site walk was conducted as scheduled on September 19, 1997. (ROR, Exhibit 7B: Commission Special Meeting, Site Walk of Property at Village Hill Road, October 19, 1997). CT Page 3287
The public hearing on October 21, 1997 addressed both the application for zone change and the application for special permit. Hice's professional engineer, Torcellini, presented testimony in favor of the applications at the public hearing. (ROR, Exhibit 11: Verbatim Minutes of Commission Meeting on October 21, 1997). In addition, Robert Whalen, the owner of MycoScience, the proposed business to be operated at the subject property, presented testimony in favor of the applications, specifically with regard to the nature of the business of MycoScience. (ROR, Exhibit 11). The October 21 hearing was then opened up for public comment. (ROR, Exhibit 11, p. 20). There was comment both for and against the applications. (ROR, Exhibit 11). In addition, petitions in opposition, photos of the area and several letters (both in opposition and in support) were submitted to the commission. (ROR, Exhibit 11). The public hearing was continued to November 6, 1997. (ROR, Exhibit 11, p. 65).
At the November 6 continuation of the public hearing, the commission heard further comment by the public, both for and against the applications. (ROR, Exhibit 44: Verbatim Minutes of Commission Meeting on November 6, 1997). After the conclusion of public comment on the applications, the commission closed the public hearing. (ROR, Exhibit 44, p. 64).
On December 2, 1997, the commission reconvened to consider the applications.[2] (ROR, Exhibit 65: Commission Minutes, December 2, 1997). The deliberations on the applications continued at a special meeting held on December 15, 1997. (ROR, Exhibit 66: Commission Minutes, Special Meeting, December 15, 1997). On that date, the commission's chairman presented a detailed motion; (ROR, Exhibit 67: Zone Change Motion); and the commission unanimously approved the zone change application after making extensive findings. (ROR, Exhibit 66, pp. 10-12). The December 15 special meeting was adjourned prior to a vote on the special permit, and was reconvened the following night, on December 16, 1997, to address the special permit. (ROR, Exhibit 68: Commission Minutes, December 16, 1997).
At the December 16 meeting, the commission unanimously approved the special permit application after noting conditions of the special permit, and unanimously approved a motion for findings on the application. (ROR, Exhibit 68, pp. 8-11; ROR, Exhibit 69: Full Text of Motions on Special Permit). CT Page 3288
The plaintiffs allege that legal notice of the commission's decisions were published in the Willimantic Chronicle on December 18, 1997. (ROR, Exhibit 70: Legal Notice); see also Plaintiffs' Second Amended Complaint, First Count, ¶ 3 and Second Count, ¶ 3. On January 7, 1998, the plaintiffs filed this appeal.
 II. JURISDICTION
A. Aggrievement
General Statutes § 8-8 governs appeals taken from the decisions of a planning and zoning commission to the Superior Court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) BridgeportBowl-O-Rama Inc. v. Zoning Board of Appeals, 195 Conn. 276, 283,487 A.2d 559 (1985).
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 192, 676 A.2d 831 (1996). Under General Statutes §8-8 (a)(1), "`aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." The plaintiffs have alleged that they own property which abuts the premises at issue. Plaintiffs' Second Amended Complaint, First Count, par; 4 and Second Count, ¶ 4. In addition, the plaintiffs have submitted a certified copy of the deed to their property filed in the Willington land records. Plaintiffs' Exhibit A. Accordingly, the court finds that the plaintiffs are aggrieved pursuant to General Statutes § 8-8.
B. Timeliness and Service of Process
General Statutes § 8-8 provides that an "appeal shall be commenced by service of process . . . within fifteen days from the date that notice of the decision was published." General Statutes § 8-8 (b); see also General Statutes § 8-26e
(providing that notice of special permit decision is to be published within fifteen days after such decision is rendered). The plaintiffs allege that the commission published notice of its decision to grant the zone change and special permit applications on December 18, 1997.[3] See Plaintiffs' Second Amended CT Page 3289 Complaint, First Count, x 3 and Second Count, ¶ 3. Pursuant to General Statutes § 8-8 (e),[4] service was made on Ralph Tulis, Chairperson of the commission, and Patricia Goodbut, Clerk of the town of Willington, on December 31, 1997. Accordingly, the court finds that the plaintiffs' appeal of the commission's approval of the applications was timely served on the proper parties.
 III. DISCUSSION
The plaintiffs appeal the decision of the commission on the grounds that the commission: (1) improperly granted the applications since Hice was not a party who could apply for the zone change and special permit and (2) acted illegally, arbitrarily and in abuse of its discretion in (a) approving the special permit application for a use not permitted under the regulations and (b) approving the zone change application since the proposed use is not permitted in a DNC zone and the zone change was contrary to the comprehensive plan of zoning.[5]
In support of their argument that the commission improperly granted the applications because Hice was not a party who could apply for the zone change and special permit, the plaintiffs cite to §§ 12.03.02.01 (delineating the persons who may apply for a designed development zone) and 13.04.01 (delineating the persons who may apply for a special permit) of the Willington zoning regulations. The language of §§ 12.03.02.01 and 13.04.01 is virtually identical, providing that the following persons may apply for the respective applications: "An owner, or all of the joint owners, of the property within the proposed Designed Development Zone [or upon which the use is to be located for the special permit application]; the prospective purchasers of such property, pursuant to a written purchase agreement, option agreement, bond for deed, or similar document, provided, however, that the said document accompanies the application and authorizes the prospective purchaser to apply for zoning permits from the Town, or, in the alternative, the written consent of the owner of the fee simple interest accompanies the application; the lessee of a leasehold interest, provided that either the written consent of the owner of the fee simple interest accompanies the application or, in the alternative, that a written lease, which must accompany the application, provides that the lessee is authorized to apply for zoning permits from the Town." Willington Zoning Regs., §§ 12.03.02.01 and 13.04.01. The plaintiffs argue that Hice is not an owner, a prospective purchaser or a CT Page 3290 lessee of the property, and accordingly has no interest in the property and could not apply for the zone change and special permit.
In response, the defendants assert that regardless of what the regulations provide, the question of whether Hice had standing to apply for the zone change and special permit "centers on whether or not a zoning commission at any time during the entire proceedings was aware of the identity of the parties with a stake in the outcome of the zoning decision" for the purpose of determining whether there exists a conflict between any of the parties in interest and the members of the commission. Defendants' Brief, pp. 29-30, citing Howard v. City of Norwich, Superior Court, judicial district of New London at Norwich, Docket No. 101425 (May 12, 1994, Silbert, J.). According to the defendants, the commission was fully aware of the identity of Hice, and thus the commission's consideration of the applications was proper.
The record is devoid of any indication of Hice's interest in the subject property. At oral argument on the appeal, however, the parties indicated that Hice is the builder for Whalen and MycoScience, and that Hice filed the applications as the agent of MycoScience. There is apparently no dispute that at all times during the hearings before the commission the parties involved were aware that Whalen was the owner of the business to be located on the property and that Whalen was the prospective purchaser of the lot. (ROR, Exhibit 10; ROR, Exhibit 11). There is also no dispute that the owners of the property, the Valleys, consented to Hice's applications for a zone change and special permit by signing the applications. (ROR, Exhibit 1; ROR, Exhibit 2). Based on these facts, the court concludes that the plaintiffs' argument that the applications were erroneously granted to an improper applicant are meritless for several reasons.
First, as a builder acting on behalf of the prospective purchaser of the property, and with the accompanying signatures of the Valleys consenting to the applications, Hice's status as applicant may appropriately fall within §§ 12.03.02.01 and 13.04.01 of the regulations, which allow the prospective purchaser to apply for the zone change and special permits with the consent of the owners. Indeed, "[a]pplicants are permitted to act through agents." Huff v. Zoning Board of Appeals of the Townof Southbury, Superior Court, judicial district of Waterbury, CT Page 3291 Docket No. 076559 (May 13, 1987, Flynn, J.) (2 C.S.C.R. 737). "In such a situation, the principal for whom some agent acts must have standing." Id. There is no question that Whalen and MycoScience, as prospective purchasers of the lot, would have proper standing to apply for the zone change and special permit. See, e.g., Shapero v. Zoning Board, 192 Conn. 367, 376-77,472 A.2d 345 (1984); Schulman v. Zoning Board of Appeals,154 Conn. 426, 431, 226 A.2d 380 (1967). The court recognizes that there may exist a certain value to permitting the builder, as agent of the owner, to apply for the zone change and special permit: "A development proposal may actually have several persons or companies benefitting [benefiting] from an approval, and any one of them could be the applicant. Where one of them is a developer with a good reputation of responsiveness to community interests or quality of construction it should be the applicant. Some builders have a track record in the community which creates confidence that they will build quality . . . buildings and enhance surrounding property values. This often helps the chances of approval of a . . . [project]." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 15.8, p. 282.
Even if Hice cannot technically be considered the "agent" of MycoScience, Hice is still connected with the proposed project as builder. Accordingly, there is no reason to overturn the decision of the commission on the basis that Hice has no standing to apply for the zone change and special permit. Standing in this context seeks to determine whether the non-owner applicant is "a real party in interest with respect to the subject property." Richardsv. Planning Zoning Commission, 170 Conn. 318, 323,365 A.2d 1130 (1976). The concept of standing is grounded in public policy: "Without standing, persons could apply for land use approvals who have no real interest in the subject property and make an application merely for reasons of speculation, harassment or some other improper motive. The property owner might have the value of his property reduced by the decision on the application with no effect on an applicant who has no legal or equitable interest in the property. A requirement of standing also insures that land use agencies are not burdened with unauthorized or unnecessary applications or asked to issue approvals which are academic and will never be used." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 15.8, p. 285; see Huff v. Zoning Board of Appeals of the Town ofSouthbury, supra, 2 C.S.C.R. 737. These concerns are not implicated in the present case, where the applicant, who happens to be the builder in the underlying project, acts on behalf of, CT Page 3292 and in furtherance of, the will of both the owners and the prospective purchaser.
Accordingly, the court concludes that §§ 12.03.02.01 and 13.04.01 of the Willington zoning regulations do not preclude Hice from applying for the zone change and special permit, and the commission did not improperly grant the applications on this basis.
The plaintiffs also argue that the commission acted illegally, arbitrarily and in abuse of its discretion in approving the special permit and zone change applications.
The DNC zone at issue here is a form of what is commonly referred to as a "floating zone." "A floating zone is a special detailed use district of undetermined location in which the proposed kind, size and form of structures must be preapproved. It is legislatively predeemed compatible with the area in which it eventually locates if specified standards are met and the particular application is not unreasonable. . . . It differs from the traditional Euclidean' zone in that it has no defined boundaries and is said to `float' over the entire area where it may eventually be established." (Citation omitted; internal quotation marks omitted.) Schwartz v. Town Plan ZoningCommission, 168 Conn. 20, 22, 357 A.2d 495 (1975); Sheridan v.Planning Board, 159 Conn. 1, 16, 266 A.2d 396 (1969). "[W]hen a zoning board grants an application requesting it to apply a floating zone to a particular property, it alters the zone boundaries of the area by carving a new zone out of an existing one." Sheridan v. Planning Board, supra, 17. "If the zoning body . . . determines that all relevant criteria and conditions have been or can be met, the zone change is approved, and the zone `floats' down upon the designated area to establish physical boundaries." Pleasant Valley Neighborhood Assn. v. Planning Zoning Commission, 15 Conn. App. 110, 114-15, 543 A.2d 296
(1988), citing Sheridan v. Planning Board, supra, 16; Nick v.Planning Zoning Commission, 6 Conn. App. 110, 113, 503 A.2d 620
(1986).
"Floating zones involve a two-step procedure. As a first step, the zoning commission adopts the floating zone regulations. . . . As a second step a property owner petitions the zoning commission to designate his property as a floating zone, allowing the use specified in the zoning regulations. The second step involves an actual change of zone and approval of the CT Page 3293 particular land development project." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 3.8, p. 30.
"The regulations may require approval of a special permit as a condition for using specific property for the preapproved uses in the floating zone, or it may achieve substantially the same thing by a set of defined standards stating when, and under what circumstances the property may be used for the specific use." Id. The Willington zoning regulations require the approval of a special permit for uses such as that proposed in the present case in the floating zone. See Willington Zoning Regs., § 5.03.01.02. Thus, the court must first determine whether the commission properly approved Hice's special permit application.
"The terms `special exception' and `special permit' are synonymous and have been used interchangeably." Irwin v. Planning Zoning Commission, 244 Conn. 619, 623 n. 4, 711 A.2d 675 (1998). "A special permit allows the property owner to use his property in a manner expressly permitted by the local zoning regulation. . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience, and property values." (Internal quotation marks omitted.) Connecticut Resources Recovery Authority v. Planning Zoning Commission, 46 Conn. App. 566, 569, 700 A.2d 67, cert. denied, 243 Conn. 935, 702 A.2d 640 (1997). "`The basic rationale for the special permit . . . is that while certain land uses may be generally compatible with the uses permitted as of right in a particular zoning district, their nature is such that their precise location and mode of operation must be individually regulated because of the particular topography, traffic problems, neighboring uses, etc., of the site.'" Whisper Wind DevelopmentCorp. v. Planning Zoning Commission, 32 Conn. App. 515, 519,630 A.2d 108 (1993), aff'd, 229 Conn. 176, 640 A.2d 100 (1994), quoting T. Tondro, Connecticut Land Use Regulation (2d Ed.), p. 175.
"When ruling upon an application for a special permit, a planning and zoning [commission] acts in an administrative capacity." (Internal quotation marks omitted.) Irwin v. Planning Zoning Commission, supra, 244 Conn. 627-28. The commission's "function is to determine whether the applicant's proposed use is one that satisfies the standards set forth in the existing regulations and statutes." Cybulski v. Planning ZoningCT Page 3294Commission, 43 Conn. App. 105, 110, 682 A.2d 1073, cert. denied,239 Conn. 949, 686 A.2d 123 (1996). "Review of zoning commission decisions by the Superior Court is limited to a determination of whether the commission acted arbitrarily, illegally or unreasonably." Id., citing Wnuk v. Zoning Board of Appeals,225 Conn. 691, 695-96, 626 A.2d 698 (1993). "The plaintiffs bear the burden of proving that the commission acted unreasonably, arbitrarily or illegally." Michel v. Planning ZoningCommission, 28 Conn. App. 314, 323, 612 A.2d 778, cert. denied,223 Conn. 923, 614 A.2d 824 (1992), citing Spero v. Zoning Boardof Appeals, 217 Conn. 435, 440, 586 A.2d 590 (1991).
"It is well settled that in granting a special permit, an applicant must satisf[y] all conditions imposed by the regulations. . . . The zoning commission has no discretion to deny the special exception if the regulations and statutes are satisfied." (Internal quotation marks omitted.) ConnecticutResources Recovery Authority v. Planning Zoning Commission, supra, 46 Conn. App. 569.
General Statutes § 8-26e provides in relevant part that "[w]henever a commission grants or denies a special permit or special exception, it shall state upon its records the reason for its decision." General Statutes § 8-26e. "In situations in which the zoning commission does state the reasons for its action, the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations." (Internal quotation marks omitted.) Irwin v. Planning ZoningCommission, supra, 244 Conn. 629. "The action of the commission must be sustained if even one of the stated reasons is sufficient to support it." (Internal quotation marks omitted.) PropertyGroup, Inc. v. Planning Zoning Commission, 226 Conn. 684, 697,628 A.2d 1277 (1993). Where the zoning commission "does not formally state the reasons for its decision, however, the trial court must search the record for a basis for the [commission's] decision." Bloom v. Zoning Board of Appeals, 233 Conn. 198, 208,658 A.2d 559 (1995).
In the present case, the commission stated upon the record at the commission meetings the reasons for its decision to approve the zone change application. Thus, the court need only determine whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which CT Page 3295 the commission is required to apply under the zoning regulations.[6]
The plaintiffs argue that the commission should not have approved Hice's special permit application because the proposed use of the property, as a "commercial building lab/office," is not a permitted use under the Willington zoning regulations.[7]
The plaintiffs assert that the proposed use of the property for, as they allege, "research and development," is only permitted in a Designed Industrial (DI) zone, not a DNC zone. Accordingly, the plaintiffs argue that the commission acted arbitrarily, illegally and in abuse of its discretion in granting the special permit application for a use not permitted in the DNC zone.
Section 5.03 of the Willington zoning regulations provides for the "Designed Neighborhood Commercial Zone (DNC)." Section 5.03.01.01 provides for "[u]ses and use categories permitted as a matter of right" in a DNC zone. Those uses include three specific uses for dwellings, farms and forestry activities. See Willington Zoning Regs., §§ 5.03.01.01.01 to 5.03.01.01.03. Section 5.03.01.02 of the regulations provides for uses requiring a special permit in the DNC zone, which may be issued in conformity with § 13 of the regulations. Because the proposed use of the property in the present case is not a use permitted as a matter of right for a DNC zone under § 5.03.01.01, it must fall within § 5.03.01.02 of the Willington zoning regulations, which delineates a laundry list of specific uses requiring a special permit, or else constitute a prohibited use in the DNC zone.
The plaintiffs argue that the proposed use of the property at issue is not a use listed under § 5.03.01.02 and is thus a prohibited use. Central to this argument is the plaintiffs' characterization of the use of the property for "research and development." Indeed, research and development is not a use listed in § 5.03.01.02. However, among the permitted uses listed in § 5.03.01.02 are: business services; Willington Zoning Regs., § 5.03.01.02.06; office, general or professional; id., § 5.03.01.02.11; and professional services, i.e., services to business and professional users; id., § 5.03.01.02.12. The court concludes that there is ample evidence in the record to support the commission's conclusion that the proposed use was a use permitted under one or all of these sections of the Willington zoning regulations. CT Page 3296
First, the proposed use of the property, as described on the applications, is for "commercial building lab/office"; (ROR, Exhibit 2); and "a 5,000 square foot commercial building, parking and utilities." (ROR, Exhibit 1; ROR, Exhibit 2). In addition, the commission heard extensive testimony from Robert Whalen, the owner of MycoScience, on the nature of the business and the proposed use of the property. Specifically, Whalen indicated that MycoScience (which, at the time of the hearings, maintained an existing office in Willington (ROR, Exhibit 5; ROR, Exhibit 7A, p. 2)) is engaged in a variety of consulting work, including regulatory compliance, quality assurance system documentation, mock FDA audits and the like. (ROR, Exhibit 11, pp. 10-11). Whalen also testified that MycoScience engages in research and development for the design of medical systems and diagnostic products. (ROR, Exhibit 11, p. 11). According to Whalen, the "lab operations" component of the company consists of "about 30-33% of [its] business overall, [and] takes up about 50% of [its] space and about 75% of [its] equipment." (ROR, Exhibit 11, p. 11).
Based on the record, it appears that the proposed use of the building and property involves a combination of uses. The record does not indicate that the commission considered whether theprimary use of the proposed building was business/commercial or lab oriented. The record reveals, however, that the commission considered the use as commercial or business oriented, rather than lab oriented, as indicated in its deliberations and findings. (ROR, Exhibit 66; ROR, Exhibit 67, pp. 1, 2; ROR, Exhibit 68, pp. 8-11; ROR, Exhibit 69). The commission made no mention in its deliberations of the research and development component of the proposed use.
Because there is a combination of uses for the proposed property, the characterization of its primary use is a question of fact to be resolved by the commission. See, e.g., Fox v.Zoning Board of Appeals, 146 Conn. 70, 75, 147 A.2d 472 (1958) (holding that when a building is used for multiple purposes, "the main, principal and dominant use of [the] building determines its character"; this determination is one of fact); Daughters of St.Paul v. Zoning Board of Appeals, 17 Conn. App. 53, 58,549 A.2d 1076 (1988) (same); R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 4.19, p. 71 (same). "[O]n factual questions . . . a reviewing court cannot substitute its judgment for that of the agency. . . . If there is conflicting evidence in support of the zoning commission's stated rationale, the reviewing court . . . cannot substitute its judgment as to CT Page 3297 the weight of the evidence for that of the commission. . . . The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." (Citations omitted; internal quotation marks omitted.)Irwin v. Planning Zoning Commission, supra, 244 Conn. 629. "[T]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency." Newtown v. Keeney, 234 Conn. 312, 319, 661 A.2d 589
(1995). "The settled standard of review of questions of fact determined by a zoning authority is that a court may not substitute its judgment for that of the zoning authority as long as it reflects an honest judgment reasonably exercised. . . . The court's review is based on the record, which includes the knowledge of the board members gained through personal observation of the site . . . or through their personal knowledge of the area involved." (Citations omitted; internal quotation marks omitted.) Cybulski v. Planning Zoning Commission, supra,43 Conn. App. 111, citing Burnham v. Planning ZoningCommission, 189 Conn. 261, 267, 455 A.2d 339 (1983).
In addition, "[g]enerally, it is the function of [the] zoning . . . commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The . . . trial court [must] decide whether the [commission] correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the [commission] is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." (Citations omitted; internal quotation marks omitted.) Irwin v. Planning Zoning Commission, supra,244 Conn. 627-28. "On appeal, a reviewing court reviews the record of the administrative proceedings to determine whether the commission . . . has acted fairly or with proper motives or upon valid reasons." (Internal quotation marks omitted.) Schwartz v.Planning Zoning Commission, 208 Conn. 146, 152, 543 A.2d 1339
(1988).
Upon review of the record, it is evident that the commission has acted fairly, with proper motives and upon valid reasons in applying the appropriate zoning regulations to the facts of the present case. The commission fully considered whether the proposed use satisfies the standards set forth in the zoning CT Page 3298 regulations and the conditions necessary to protect the public health, safety, convenience and property values in its deliberations. (ROR, Exhibit 66; ROR, Exhibit 67, pp. 1, 2; ROR, Exhibit 68, pp. 8-11; ROR, Exhibit 69); see Willington Zoning Regs., § 13.05. Accordingly, the commission has not acted unreasonably, arbitrarily or illegally in granting the special permit application.
The plaintiffs urge, however, that the existence of § 5.05 of the regulations, which authorizes DI zones and which expressly permits "[r]esearch and development processes on any materials not prohibited in Section 4.15 or Section 6 of these Regulations"; Willington Zoning Regs., § 5.05; 01.02.04; indicates that the commission may not grant a special permit for a use involving "research and development" in a DNC zone because the regulations governing DNC zones do not expressly permit such a use. In support, the plaintiffs cite "the tenet of statutory construction referred to as expressio unius est exclusio alterius which may be translated as the expression of one thing is the exclusion of the other.' (Black's Law Dictionary, 6th Ed. 1990)." Plaintiffs' Brief, p. 10. The plaintiffs also emphasize the stated purpose of the DNC zone, found in § 5.03.01 of the regulations, which states that "[t]he purpose of the [DNC zone] is to allow for the creation of small, high-quality, integrated, commercial developments within the Town of Willington which meets the daily, convenience-type shopping and service needs of a particular neighborhood within the Town and encourages a diversity of uses which are complementary both with the surrounding residential area and among the various uses. While individual developments may take place within a DNC Zone, the Commission shall consider each in terms of its relationship to the Zone as a whole. . . ." Willington Zoning Regs., § 5.03.01.
Notwithstanding these arguments, the issue in the present case centers upon the commission's judgment of the facts regarding the character of the proposed use of the property. The court may not substitute its judgment as to the weight of the evidence for that of the commission as long as it reflects an honest judgment reasonably exercised and based on the record. Because the determination that the proposed use is business/commercial related is a judgment reasonably exercised by the commission and reasonably based on the record, the court may not substitute its judgment for that of the commission. CT Page 3299
In addition, the broad policy intent of § 5.03.01 of the regulations similarly implicates the commission's discretion to consider the facts and to render a decision based on its judgment. As a broad policy statement, it is evident that § 5.03.01 of the regulations provides no definitive standards. Moreover, the expansive application of this policy statement, and thus the expansive application of the DNC floating zone, is indicated by the broad range of uses delineated in § 5.03.01.02. Accordingly, the plaintiffs' arguments to this effect are unavailing.
The court concludes that Hice satisfied all conditions imposed by the regulations, and the commission correctly interpreted the pertinent sections of the regulations and applied them with reasonable discretion to the facts. Moreover, the record reflects that the commission reasonably exercised honest judgment in determining that the proposed use of the property was appropriate for a DNC zone. The plaintiffs have failed to demonstrate that the commission acted illegally, arbitrarily or in abuse of its discretion in granting Hice's special permit application. Accordingly, the plaintiffs' appeal on this basis is denied.
The plaintiffs also challenge the commission's approval of the zone change application on the basis that the commission acted illegally, arbitrarily and in abuse of its discretion in approving the zone change application because the proposed use is not permitted in a DNC zone and the zone change was contrary to the comprehensive plan of zoning.
"[A] reviewing court's discretion in examining a zoning body's actions in ruling upon a zone change application is very limited. When formulating zoning regulations, including theestablishment of particular zones and the designation thereof, a local zoning authority is acting in its legislative capacity. . . .`[C]ourts cannot substitute their judgment for the wide and liberal discretion vested in local zoning authorities when they have acted within their prescribed legislative powers. Courts must not disturb the decision of a zoning commission unless the party aggrieved by that decision establishes that the commission acted arbitrarily or illegally. . . .' Burnham v.Planning Zoning Commission, [supra, 189 Conn. 266]. In addition, when the zoning body [has] made known on the record the reasons for its actions, `the reviewing court ought only to determine whether the assigned grounds are reasonably supported CT Page 3300 by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations.' Fedorich v. Zoning Board of Appeals,178 Conn. 610, 613, 424 A.2d 289 (1979). . . . Therefore, the action of the zoning body must be sustained by the reviewing court if even one of the stated reasons is sufficient to support it.'Burnham v. Planning Zoning Commission, supra, 265. . . ." (Citations omitted; internal quotation marks omitted.) PleasantValley Neighborhood Assn. v. Planning Zoning Commission, supra,15 Conn. App. 113-14.
As noted supra, the commission in the present case stated upon the record at the commission meetings the reasons for its decision to approve the special permit application. Thus, the court need only determine whether the reasons assigned are supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations.
The plaintiffs note that the first step of the two-step procedure for applying floating zones has been met by the commission in adopting floating zone regulations. See Willington Zoning Regs., §§ 5 et seq. The plaintiffs argue, however, that the second step has not been met because, although Hice has petitioned the commission for DNC zone designation, Hice cannot demonstrate that the proposed use of the property, as a "commercial building lab/office," is permitted under the DNC zone regulations.
As discussed, supra, however, the court concludes that the special permit has been properly granted by the commission since the proposed use falls within § 5.03.01.02 of the Willington zoning regulations. Therefore, the plaintiffs' argument that the zone change application was improperly granted on the basis that the proposed use is not permitted in a DNC zone is without merit.
As a second basis for their claim that the commission improperly granted the zone change application, the plaintiffs argue that the zone change is contrary to the comprehensive plan of zoning and constitutes "spot zoning."
"[A]n application to apply a floating zone to a particular property . . . is a request for a zone change." HomartDevelopment Co. v. Planning Zoning Commission,26 Conn. App. 212, 215, 600 A.2d 13 (1991), citing Schwartz v. Town PlanCT Page 3301 Zoning Commission, supra, 168 Conn. 24; see also R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 3.8, p. 30. In this respect, "[t]he test of the action of the commission is two-fold: (1) The zone change must be in accord with a comprehensive plan, General Statutes § 8-2, . . . and (2) it must be reasonably related to the normal police power purposes enumerated in § 8-2. . . ." (Citations omitted.)First Hartford Realty Corp. v. Plan Zoning Commission,165 Conn. 533, 541, 338 A.2d 490 (1973); see General Statutes §8-2.[8]
"A comprehensive plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential use of the properties. . . . The requirement of a comprehensive plan is generally satisfied when the zoning authority acts with the intention of promoting the best interests of the entire community." (Citation omitted; internal quotation marks omitted.)Protect Hamden/North Haven from Excessive Traffic and Pollution,Inc. v. Planning Zoning Commission, 220 Conn. 527, 551,600 A.2d 757 (1991). "The basic purpose of requiring conformance to a comprehensive plan is to prevent the arbitrary, unreasonable and discriminatory exercise of the zoning power." Summ v. ZoningCommission, 150 Conn. 79, 88, 186 A.2d 160 (1962). "In the absence of a formally adopted comprehensive plan, a town's comprehensive plan is to be found in the scheme of the zoning regulations themselves." (Internal quotation marks omitted.)Protect Hamden/North Haven from Excessive Traffic and PollutionInc. v. Planning Zoning Commission, supra, 551.
"When municipal legislative bodies `are acting within the limits of the formal powers conferred upon them, and in due form of law, the rights of courts to supervise, review or restrain them is necessarily exceedingly limited.' LaTorre v. Hartford,167 Conn. 1, 8-9, 355 A.2d 101 (1974); McAdam v. Sheldon,153 Conn. 278, 281, 216 A.2d 193 (1965); Whitney v. New Haven,58 Conn. 450, 457, 20 A. 666 (1890). `[A]ny broader rule would potentially involve the courts in the review and revision of many, if not all, major controversial decisions of the legislative . . . authorities of a municipality.' McAdam v.Sheldon, supra." Homart Development Co. v. Planning ZoningCommission, supra, 26 Conn. App. 219.
The record in the present case reveals that there was CT Page 3302 substantial evidence offered in support of the application for zone change as well as substantial evidence in opposition. The commission had the task of weighing the evidence and reaching a conclusion on the merits of Hice's application. A review of the record discloses that the commission meticulously addressed the requisite considerations outlined in § 12.04 of the Willington zoning regulations, which governs the detailed criteria for decisions on zone changes for design development zones. (ROR, Exhibit 66; ROR, Exhibit 67). Concomitantly, in considering the criteria of § 12.04, the commission implicitly determined that the zone change was reasonably related to the normal police power purposes enumerated in § 8-2 of the General Statutes because the criteria outlined in § 12.04 are crafted to ensure that the commission acts upon designed development zone change applications with the intention of promoting the best interests of the entire community and with the police power purposes of § 8-2 in mind. See Willington Zoning Regs., § 12.04, General Statutes § 8-2. The lengthy deliberations and findings of the commission indicate that the commission weighed the requisite considerations under § 12.04 and acted with the intention of promoting the best interests of the community. (ROR, Exhibit 66; ROR, Exhibit 67); see Willington Zoning Regs., §§ 12.04.02 to 12.05.
Upon review of the record, it is evident that the judgment of the commission to grant the application for a zone change "`has been reasonably and fairly exercised and honestly arrived at after giving proper consideration to the public welfare in evaluating the needs of [the community] in relation to the appropriate use of land contained therein.'. . . To conclude otherwise would undermine the flexibility inherent in the floating zone concept and would require [the court] to substitute [its] judgment for that of the commission." (Citation omitted.)Homart Development Co. v. Planning Zoning Commission, supra,26 Conn. App. 220, quoting Sheridan v. Planning Board, 159 Conn. 1,21, 266 A.2d 396 (1969). Indeed, "[h]ow the public welfare would best be served [is] a decision within the discretion of the commission." Hawkes v. Town Plan Zoning Commission,156 Conn. 207, 211, 240 A.2d 914 (1968). Accordingly, the court finds that the record reflects that the zone change is in accord with the comprehensive plan of the Willington zoning regulations and is reasonably related to the normal police power purposes enumerated in General Statutes § 8-2.
The plaintiffs also claim that the zone change constitutes CT Page 3303 spot zoning. "[S]pot zoning is the reclassification of a small area of land in such a manner as to disturb the tenor of the surrounding neighborhood. . . . Two elements must be satisfied before spot zoning can be said to exist. First, the zone change must concern a small area of land. Second, the change must be out of harmony with the comprehensive plan for zoning adopted to serve the needs of the community as a whole." (Citation omitted; internal quotation marks omitted.) Blaker v. Planning ZoningCommission, 212 Conn. 471, 483, 562 A.2d 1093 (1989). At least one commentator has recognized that "[t]he spot zoning concept has become obsolete because the size of the parcel involved in a zone change is immaterial if the commission's action meets the two part test for a zone change." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 4.8, p. 54. Indeed, where "the change of zone is in accordance with the comprehensive plan, the claim that it constitutes spot zoning is without merit." Weigel v. Planning Zoning Commission,160 Conn. 239, 243, 278 A.2d 766 (1971); Sheridan v. Planning Board, supra,159 Conn. 18-19. Since the court has already concluded that the zone change is in accord with the Willington comprehensive plan, the plaintiffs' challenge of the commission's decision to grant the zone change application on the basis that the decision constitutes spot zoning is without merit.
Therefore, the plaintiffs' appeal on the basis that the commission acted illegally, arbitrarily and in abuse of its discretion in granting the zone change application is denied.
 IV. CONCLUSION
Pursuant to the foregoing, the plaintiffs' appeal is dismissed.
Klaczak, J.